**Jason K. Singleton,** State Bar #166170
jason@singletonlawgroup.com
**Richard E. Grabowski,** State Bar #236207
rgrabowski@mckinleyville.net
**SINGLETON LAW GROUP**
**611 "L" Street, Suite A**
**Eureka, CA 95501**
**(707) 441-1177**
**FAX  441-1533**

**Attorneys for Plaintiff, ASIS INTERNET SERVICES**
**and JOEL HOUSEHOLTER, dba FOGGY.NET**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation, and JOEL HOUSEHOLTER, dba KNEELAND ENGINEERING, dba FOGGY.NET, | Case No.  C-08-5261 SBA |
| | **PLAINTIFFS' OPPOSITION TO** |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS** |
| | **PURSUANT TO** *FRCP* **12(b)(2) and** |
| vs. | *FRCP* **12(b)(6)** |
| | |
| VISTAPRINT USA, INCORPORATED, a Delaware corporation, VISTAPRINT LIMITED, a Bermuda Company, aka VISTAPRINT.COM, aka VISTAPRINT, ROBERT S. KEANE  and DOES ONE through FIFTY, inclusive, | **DATE:  April 7, 2009** |
| | **TIME:   1:00 P.M.** |
| | **CTRM:  3** |
| | |
| Defendants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**BACKGROUND** .......... ......... .......... .......... ................... .......... .......... ......... .......... ..........1

    **a.** **VistaPrint's Business** ... .......... ................... .......... .......... ......... .......... ..........1

    **b.** **History of the legislation** .......... ................... .......... .......... ......... .......... ..........3

**INTRODUCTION** .......... ......... .......... .......... ................... .......... .......... ......... .......... ..........6

**ARGUMENT** .......... ......... .......... .......... ................... .......... .......... ......... .......... ..........8

**1.** *California Business & Professions Code §*17529.5, is not preempted by the *CAN SPAM Act of 2003* and does not require a showing of common law fraud......8

    **a.** **Prior decisions are based on actions by consumer plaintiffs not on cases involving ESPs. The courts have ruled that statutes creating third party representatives can rely on the interests of the general public to establish harm. Therefore as third party representatives ESPs can rely on the interests of the general public to establish harm** ..... .......... ..........9

    **b.** **A finding that** *B&P Code §*17529.5 **requires a showing of common law fraud effectively preempts the statute as to email service providers and since there are plausible readings that will save the statute, such a ruling is contrary to the instructions of higher courts** .... .......... ......13

**2.** **Plaintiff has pled all of the elements of** *B&P Code §*17529.5 **and has pled the averments of fraud with particularity** ................ .......... .......... ......... .......... ......20

    **a.** **Plaintiff has pled the elements of** *B&P Code §*17529.5 **sufficient to meet the notice requirements of the federal pleading standard. FRCP Rule 8** ......... .......... .......... ................... .......... .......... ......... .......... ......20

    **b.** **Plaintiff has pled the averments of fraud with particularity as required by FRCP Rule 9** ......... ................... .......... .......... ......... .......... ......22

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601]..................................................................................................14

*Altria Group, Inc. v. Good* (U.S., 2008) 129 S. Ct. 538 at 543 ..................................13, 15

*Altria Group, Inc. v. Good*, 129 S. Ct. 538 at 543 (U.S. 2008) ..................................13

*Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133 (C.D.Cal.,2005) ..........................21

*ASIS Internet Services v. Optin Global, Inc.*, No. C05-5124, 2008 WL 1902217, at *19 (N.D. Cal. April 29, 2008) ..................................................................................4, 10

*Bates v. Dow Agrosciences LLC* (2005) 544 U.S. 431 at 449 ..................................15

*Brockey v. Moore* (2003) 107 Cal.App.4th 86, 100 [131 Cal.Rptr.2d 746]..................14, 17, 18

*Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939 (S.D.Cal.,2007)..........................21

*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663 at 682 [38 Cal.Rptr.3d 36] ..................................................................................14, 17, 22

*Deutsch v. Flannery*, 823 F.2d 1361 at 1365 (9th Cir. 1987) ..................................22

*Freeman v. Time, Inc.* (9th Cir.1995) 68 F.3d 285, 289 ..................................14, 17, 20

*Hart v. McLucas* (9th Cir., 1976) 535 F.2d 516 at 519 ..................................17, 18

*Hoang v. Reunion.com, Inc.*  Slip Copy, 2008 WL 5423226 (N.D. Cal., December, 2008)......7, 16, 17

*Hoang v. Reunion.com, Inc.*, Slip Copy, 2008 WL 4542418 at *1 and *2 (N.D. Cal., October, 2008)..................................................................................9, 15

*Horizon Mut. Sav. Bank v. Federal Sav. & Loan Ins. Corp.* (9th Cir. 1982) 674 F.2d 1312..............17

*In re: VistaPrint Corp. Marketing and Sales Practices Litigation*, 589 F.Supp.2d 1377, (U.S.Jud.Pan.Mult.Lit., December, 2008) ..................................................................................1

*Jarecki v. G.D. Searle & Co.* (1961) 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 ..................15

*Jay v. Boyd* (1956) 351 U.S. 345, 360-61 ..................................................................................18

*Kleffman v. Vonage Holdings Corp.* (C.D. Cal. 2007) 2007 WL 1518650, *3 ..................................9

*Laster v. T-Mobile USA, Inc.*, 407 F.Supp.2d 1181, at 1183 (S.D.Cal., 2005) ..................................21

*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 512-513 [129 Cal.Rptr.2d 486] .....22, 24

*Linda R.S. v. Richard D.* (1973) 410 U.S. 614 ..................................................................................11

*Lorillard Tobacco Co. v. Reilly* (2001) 533 U.S. 525 at 541-542 ..................................15

*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555 at 560 ..................................16

*Massachusetts v. E.P.A.* (2007) 127 S.Ct. 1438 at 1453 ..................................11

*Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470 at 485 ..................................15

*Meyer v. Sprint Spectrum L.P.*, --- Cal.Rptr.3d ----, 2009 WL 197560 (Cal. Supreme Court 2009) ..................................................................................16, 20

*Neal v. Clark* (1877) 95 U.S. 704, 708-09, 24 L.Ed. 586 ..................................15

*Omega World Travel, Inc. v. Mummagraphics, Inc.* (4th Cir.2006) 469 F.3d 348, 353-56 .......9, 13, 15

*Rice v. Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230..................................15

*Sierra Club v. Morton* (1972) 405 U.S. 727 at 732 ..................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 , 127 S.Ct. 2499 at 2502 (U.S.,2007) .......23

*True v. American Honda Motor Co., Inc.*, 520 F.Supp.2d 1175, at 1182 and 1183 (C.D.Cal.,2007) .21

*U.S. v. Ellis* (4th Cir., 2003) 326 F.3d 550 at 557 ..................................................................................5

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 at 1106 (9th Cir.,2003) ..................................23

*Warre v. Commissioner of the Social Security Administration* (9th Cir. 2005) 439 F.3d 1001, 1005 .15

*Warth v. Seldin*, 422 U.S. 490 at 500, 95 S.Ct. 2197 (U.S. 1975)..................................6, 10, 11, 12

1

## STATUTES

2  **15 *USC* §7701** ..................................................................................................................**3**

3  **15 *USC* §7706(g)** ..............................................................................................................**4**

   **15 USC §7707** ....................................................................................................................**13**

4  **15 *USC* §7707(b)(1)** ................................................................................................**passim**

   **15 *USC* §7707(b)(2)** ..............................................................................................**15, 18**

5  ***California Business & Professions Code* §17204** ...............................................**8**

   ***California Business & Professions Code* §17529.5** ..................................**passim**

6  ***California Business & Professions Code* §17529.5(a)(1)** .............................**5**

   ***California Business & Professions Code* §17529.5(a)(2)** .............................**5**

7  ***California Business & Professions Code* §17529.5(a)(3)** .............................**5**

   ***California Business & Professions Code* §17529.5(b)(1)(A)** .................**11, 16**

8  ***California Business & Professions Code* §17529.5(b)(1)(A)(ii)** ............**9, 10**

   ***California Business & Professions Code* §17500** ...............................**5, 14**

9  ***California Business & Professions Code* §17535** ....................**8, 20, 21**

10 ***California Civil Code* §1770** .....................................................................**16, 21**

11

## RULES

12  ***FRCP* Rule 8(a)(2)** ...........................................................................................................**22**

    ***FRCP* Rule 8(a)(3)** ...........................................................................................................**22**

13  ***FRCP* Rule 12(b)(2)** ...........................................................................................................**1**

    ***FRCP* Rule 12(b)(6)** ..................................................................................................**1, 24**

14

## REGULATIONS

15

16  **14 CFR §61.59** ..................................................................................................................**18**

    **14 CFR §61.59(a)(1)** .........................................................................................................**18**

17  **16 *CFR* part 251** .........................................................................................................**5, 22**

18

## OTHER AUTHORITIES

19  **148 Cong. Rec. E865-02 (HR May 20, 2002), 2002 WL 1011956 (Cong.Rec.),**
    *CONGRESS SHOULD CLOSE THE LOOPHOLE ON CORPORATE TAX DODGING* ................**2**

20  **See 148 Cong. Rec. S1149-01 (Senate, February 26, 2002), 2002 WL 272852**
    **(Cong.Rec.),** *THE BERMUDA TRIANGLE TAX LOOPHOLE* ...............................................**2**

21

22

23

24

25

26

27

28

1  Plaintiffs, **ASIS INTERNET SERVICES** (hereafter "ASIS"), and **JOEL HOUSEHOLTER**,

2  **dba KNEELAND ENGINEERING, dba FOGGY.NET** (hereafter "FOGGY"), herein reply to

3  Defendants' Motion to Dismiss pursuant to ***FRCP*** Rule 12(b)(2) and ***FRCP*** Rule 12(b)(6).

## BACKGROUND

5  a.  **VistaPrint's Business:**

6  VistaPrint USA, Inc., and VistaPrint Limited (collectively VistaPrint hereafter) represent

7  a major illegal fraud activity being perpetrated on U.S. consumers in general and California

8  consumers specifically as alleged in the **FAC**. In addition to this suit, VistaPrint is also the

9  defendant in seven separate actions concerning false advertising and illegitimate sales

10 practices now being centralized in the Southern District of Texas. See ***In re: VistaPrint Corp.***

11 ***Marketing and Sales Practices Litigation***, 589 F.Supp.2d 1377, (U.S.Jud.Pan.Mult.Lit.,

12 December, 2008). The charges brought in ***In re: VistaPrint Corp.*** include: "(1) the Adaptive

13 defendants improperly enrolled VistaPrint customers in online membership programs, a

14 practice referred to as 'cramming;' and (2) this practice caused unauthorized charges to be

15 made on customers' credit and debit accounts in violation of the federal Electronic Fund

16 Transfer Act and/or the Electronic Communications Privacy Act." ***Id.*** at 1378.

17 VistaPrint's fraudulent activities are outrageous and well documented in complaints by

18 U.S. Consumers[1]. See courtesy copy attached hereto.

19 Mr. Keane has attempted to avoid his name being involved even though he is clearly

20 the founder, owner, and operator of VistaPrint. See SEC 10Q for VistaPrint Limited P 27

21 attached as Exhibit A to Plaintiffs' Request for Judicial Notice (hereafter "SEC 10Q"). The

22 Motion by Defendants indicates that VistaPrint Limited has not responded. (See Caption of

23 Defendants Motion indicating that Defendants Attorney Leventhal does not represent

24 VistaPrint Limited.) VistaPrint Limited has failed to answer, apparently arguing that they have

25 not been properly served. However, as Defendants' SEC document states, Mr. Keane is the

26 CEO and President of VistaPrint Limited. As such, service upon the CEO of a corporation is

27

28

---

[1] Plaintiff realizes the Court may not take into account extraneous information in considering a Rule 12(b)(6) motion, however, this information is provided merely to demonstrate that Plaintiff can amend the FAC and provide evidence of the general public interest in this matter if required.

good service and VistaPrint Limited has been properly served in this matter.  In addition, Mr. Gold, who accepted service for Mr. Keane and VistaPrint USA, Inc. is the lawful attorney in fact for VistaPrint Limited.  See SEC File 0-51539 - Accession Number 1181431-7-3301 attached as Exhibit B to Plaintiffs' Request for Judicial Notice.  Therefore, as an officer for VistaPrint Limited, service on Mr. Gold represents good service upon VistaPrint Limited.

Companies are typically formed in Bermuda to avoid judgment and tax liability.  The supposed headquarters of VistaPrint Limited (Cannon's Court 22 Victoria Street, Hamilton, HM 12 Bermuda) is nothing more than an attorney's office that has registered thousands of U.S. corporations to avoid U.S. taxes, providing a Bermuda address for those companies.

The Congress has recognized the tax loophole provided by Bermuda and has discussed the problem with the intent of eliminating the loophole.  See **148 Cong. Rec. S1149-01 (Senate, February 26, 2002)**, 2002 WL 272852 (Cong.Rec.), *THE BERMUDA TRIANGLE TAX LOOPHOLE*; and **148 Cong. Rec. E865-02 (HR May 20, 2002)**, 2002 WL 1011956 (Cong.Rec.), *CONGRESS SHOULD CLOSE THE LOOPHOLE ON CORPORATE TAX DODGING.* (See Congressional Reports courtesy copies attached hereto.)

Defendants' attorneys and Defendants are playing a strategic game to avoid liability by attempting to use the Bermuda company, VistaPrint Limited.  Mr. Keane hopes that the Court will not exert personal jurisdiction over him while at the same time claiming the Court cannot exert jurisdiction over VistaPrint Limited.  It is indicative of the type of charade Defendants are engaged in that they requested the Court take judicial notice of the VistaPrint Limited 10K report from August 2008 but did not present the 10Q report for December 2008.  See SEC 10Q.

VistaPrint Limited reports in their December 2008 10Q Report:

1) That VistaPrint Limited is highly dependent "in particular, Robert S. Keane, our Chairman, President and Chief Executive Officer"  (See SEC 10Q P 27);

2) That VistaPrint Limited is incorporated in Bermuda with most of their assets "located outside of the United States, which may make it difficult for shareholders to enforce civil liability provisions of the federal or state laws of the United States" (See SEC 10Q P 35);

3)   That there is potential liability from the Federal consumer fraud lawsuits (See SEC 10Q P 31);

4)   That VistaPrint Limited's "practice of offering free products and services could be subject to judicial or regulatory challenge" (See SEC 10Q P 31);

5)   That VistaPrint Limited "may be liable for fraudulent credit card transactions conducted on our websites" (See SEC 10Q P 32); and

6)   That under Bermuda law "A director or officer may be liable jointly and severally with other directors or officers if it is shown that the director or officer knowingly engaged in fraud or dishonesty." (See SEC 10Q P 36).

It is clear that Mr. Keane does not want to be found to be engaged in fraud and dishonesty as that would subject him and VistaPrint Limited to liability even under Bermuda law.

VistaPrint Limited is now in default and Plaintiffs will move the Court for a default judgment as to VistaPrint Limited.  Mr. Keane is playing a strategic game of claiming he is not personally involved, while proclaiming he is President and CEO of VistaPrint Limited who may be responsible but is outside the jurisdiction of the Court.

Because Plaintiffs do not currently have sufficient evidence to prove that Mr. Keane was personally involved in the sending of the emails, and based on Defendants' motion, Plaintiffs have stipulated to dismiss Mr. Keane at this time.  Therefore, the issue of personal jurisdiction regarding Mr. Keane is moot.

**b.    History of the legislation:**

The California Legislature enacted ***California Business & Professions Code*** (hereafter ***"B&P Code")*** §17529.5 in September of 2003 to control the onslaught of false advertisements being sent to California consumers in emails.  (See 2003 Cal. Legis. Serv. Ch. 487 (S.B. 186).)  Congress enacted the ***CAN SPAM Act of 2003*** (hereafter "**CSA**") in 2003 to try and control the onslaught of illegal emails.  (See  15 ***USC*** §7701 et seq.)  As of the beginning of 2009 the spammers, scammers and hackers are winning despite the best efforts of both legislatures.

This result is in part because of narrow decisions by the courts that have dramatically limited the enforcement of the statutes.

The ***CSA*** is all but dead except for enforcement by the Federal Trade Commission

(FTC).  State Attorney Generals have not pursued actions because of the heavy requirement for technical and legal resources required to bring an action.  Internet Service Providers, based on Federal lower Court rulings, no longer have standing to bring an action, even though they are specifically named as having standing in the Act.  (See  15 **USC** *§*7706(g); ***ASIS Internet Services v. Optin Global, Inc.*** Slip Copy, 2008 WL 1902217 (N.D. Cal., 2008).)  The FTC has made a valiant effort but the results have been dismal.  Spam is now growing at a rate of 200 to 300% a year with no sign of letting up anytime soon.

A lower federal court has decided that ***B&P Code*** *§*17529.5 can only avoid preemption if it requires a showing of common law fraud including justifiable reliance and damages.   A requirement that Internet Service Providers and Email Service Providers cannot meet.  Email service providers do not normally open and respond to emails containing false advertisements.  These rulings effectively preempt the statute and eliminate any deterrent effect it might have.  The State Attorney General does not have the resources to pursue prosecution of ***B&P Code*** *§*17529.5 that requires heavy investment in technical and legal resources.  Consumers who bring actions can only bring an action for a few email advertisements, resulting in decisions of less than $10,000.   In contrast advertisers make millions of dollars from their false advertisements[2].  The only group who can effectively enforce the statute and hope to achieve the objective of reducing false advertisements in emails is the email service providers.  They have the technical resources and use those resources to combat the problems created by spam and false advertising in emails.  They are in a position to collect evidence and preserve that evidence.  Yet the courts are narrowly defining the elements of the statute to eliminate email service provider actions.

The decisions the courts are making will determine whether there is any effective enforcement tools left to limit false advertisements in emails and protect the California consumer.

The legislature intended to protect the consumer with enactment of ***B&P Code*** *§*17529.5, prohibiting false advertisements in emails.  While the technical language used in the

---

[2] Note that VistaPrint Limited indicates its 2008 revenues are $400,657,000.  See Defendants' request for Judicial Notice Exhibit 1 P 16 of 25.

1  statute appears to mimic the language of the **CSA,** there is clearly a difference in purpose that

2  limits the scope of the California statute.

3      **B&P Code** §17529.5 is intended to restrict false advertising.  It is part of the larger set

4  of false advertising laws enacted by the legislature under **B&P Code** §17500, et seq. that

5  specifically regulate advertising for the State Bar (§17500.1), telephone solicitations (§17511 et

6  seq.), labeling of products made by the blind (§17520 et seq.), etc.

7      In enacting **B&P Code** §17529.5 the legislature had to deal with the realities of emails:

8  how they are sent; how claims are made; and who is the sender.  A telephone solicitation or a

9  regular mail solicitation can be a false advertisement if the sender uses someone else's name

10  or falsely identifies themselves as a well-known person.  The con man uses the name of the

11  well-known person to convince the consumer his pitch is legitimate.  The identification in the

12  email header acts exactly as the identification information in a written solicitation.  Therefore,

13  falsely representing yourself to be someone else is a material misrepresentation as described

14  in **B&P Code** §17529.5(a)(1).

15      Hiding the identity of a notorious person or concealing your identity to avoid prosecution

16  is also a form of material misrepresentation, especially when this type misrepresentation could

17  be easily cleared up in the body of the letter or email.  (See **U.S. v. Ellis** (4th Cir., 2003) 326

18  F.3d 550 at 557.)   Therefore, concealing your identity is a material misrepresentation as

19  described in **B&P Code** §17529.5(a)(2).

20      Finally, the subject line used to lure a consumer into a con or false representation is a

21  material misrepresentation.  (See 16 **CFR** part 251, "Guide concerning use of the word 'free'

22  and similar representations.")   Here the legislature has clearly intended the reasonable

23  consumer standard adopted by California as a way of determining if the subject line represents

24  a lure intended to deceive a consumer.  The statute states:  "a subject line that a person knows

25  would be likely to mislead a recipient, acting reasonably under the circumstances, about a

26  material fact regarding the contents or subject matter of the message."  **B&P Code**

27  §17529.5(a)(3).  Thus a false statement in the subject line is a material misrepresentation of a

28  false advertisement.

1    In addition, the statute only applies to advertisers.   Actions against the sender or

2  transmitter are not allowed under **B&P Code** §17529.5.

3    All of these requirements are related to proving the email advertisement is a false

4  advertisement and provides liability for the advertiser.   As such the requirements of **B&P Code**

5  §17529.5 can easily be distinguished from the **CSA** that intends to prevent misuse of internet

6  resources by regulating technical aspects related to the senders of the emails.   **B&P Code**

7  §17529.5 is based on the duty not to deceive rather than an attempt to regulate email, and

8  therefore avoids preemption on that basis.   **Altria Group, Inc. v. Good**, 129 S.Ct. 538 at 545

9  (U.S. 2008).

10    There is no real difference between **B&P Code** §17529.5 and California's other false

11  advertising laws, and it is well within the police power of the State to protect its citizens from

12  those persons who would prey on them.   Congress has made it clear it does not want to

13  interfere or preempt this important State police function by its saving statement in the **CSA**

14  preserving State statutes.  (See 15 **USC** §7707(b)(1).)

15                                   **INTRODUCTION**

16    Defendants argue that **B&P Code** §17529.5 is preempted unless it sounds in common

17  law fraud.   They have mistakenly relied on cases involving consumer efforts to show false

18  advertising under California law.   Plaintiffs ASIS and FOGGY are not consumers, they are

19  email service providers (hereafter "**ESP**") as alleged in the First Amended Complaint (hereafter

20  "**FAC**").   As such they are third party representatives appointed by the legislature to prosecute

21  violations of the statute.

22    The Supreme Court has stated that third party representatives appointed by the

23  legislature have legal rights based on the rights of others and may use the interests of the

24  general public in establishing standing.   **Warth v. Seldin**, 422 U.S. 490 at 500, 95 S.Ct. 2197

25  (U.S. 1975).

26    Other federal courts finding a requirement for common law fraud under the **CSA** have

27  based their decisions on the requirements of consumers, not **ESPs**.   Further, only one court,

28  **Hoang v. Reunion.com, Inc.,** Slip Copy, 2008 WL 4542418 at *1 and *2 (N.D. Cal., October,

2008), has actually ruled that a showing of common law fraud is required.  The **Hoang** Court allowed for filing of an amended complaint.  The **Hoang** Court has now ruled on that amended complaint and allowed another amended complaint.  (**Hoang v. Reunion.com, Inc.** Slip Copy, 2008 WL 5423226 (N.D. Cal., December, 2008)(courtesy copy attached); [hereafter "**Hoang II**"])  This hardly represents settled law.  The other courts cited by Defendants did not reach a definitive ruling and must be reviewed based on the detail facts of those cases.  Therefore this is an area of law that is being hotly contested and there is clearly a difference of opinion among the lower courts.  Defendants' reliance on the cited cases as settled law is meritless as the facts of the cited cases can be distinguished and none of the prior cases represent binding precedent on this Court.

A third party representing the general public is an extremely important perspective in this matter, as VistaPrint's actions have resulted in serious damages to the general public.

The essence of the argument concerning preemption is what the **CSA** actually requires for a state statute to avoid preemption.  The language is ambiguous and does not clearly state common law fraud is required.  While Defendants repeat this mantra again and again it is not supported by the plain language of the statute.  The language of the **CSA** requires that the State statute only "prohibits falsity or deception".  15 **USC** §7707(b)(1).  Some courts have interpreted this to mean common law fraud.  However, other courts have ruled that this only means the averments of fraud: misrepresentation; intent to deceive; and knowledge.  However, even if the requirement of common law fraud is correct, then the Court has ruled that this can be established by third party representatives by relying on the interests of the general public.

Defendants' claim that the **FAC** is not stated with particularity sufficient to state a claim are meritless.  Plaintiffs' **FAC** states each element of the violations and provides extensive evidence.  A federal claim requires only a short and plain statement that puts the defendant on notice of the violation complained.  The detailed analysis by the Defendants clearly indicate they have been put on notice of the claim.  Defendants' are confused as to Plaintiffs' status in this matter constantly repeating that Plaintiffs did not open the emails and rely on the contents.  However, Plaintiffs are **ESPs**, appointed by the legislature as third party representatives to

enforce violations of the statute, not consumers. The emails were not sent to Plaintiffs, they were sent to Plaintiffs' customers through Plaintiffs' email servers. Therefore the arguments for reliance and damages resulting from reliance are without merit.

References to Proposition 64 are likewise meritless. Proposition 64 is enacted into two statutes within the **California Business and Professions Code**: **B&P Code** §17204 refers only to statutes under §17200 et seq.; and **B&P Code** §17535 only discusses injunctions in actions brought under that section. Moreover, Proposition 64 was intended to limit suits brought by consumers who had suffered actual damages. This suit was not brought by a consumer, it was brought by **ESPs** assigned by the legislature to enforce the statute.

Defendants' argue that the **FAC** fails to plead the elements of fraud with particularity, but as Plaintiffs will demonstrate Plaintiffs have pled the averments of fraud required as a third party representative with very specific allegations and demonstrations of evidence.

As noted above, Mr. Keane has been dismissed from this matter so the issue of personal jurisdiction is moot.

### ARGUMENT

1. ***California Business & Professions Code §17529.5 is not preempted by the CAN SPAM Act of 2003 and does not require a showing of common law fraud.***

Defendants argue that the **CSA** preempts **B&P Code** §17529.5 unless a showing of common law fraud is made by the plaintiffs. As **ESPs** this requirement would eviscerate the statute. **ESPs** do not regularly open and respond to email advertisements, therefore the elements of reliance and damages are not possible. To require a showing of these elements effectively preempts the statute. Such a ruling is contrary to Supreme Court guidance to preserve statutes that are based on a State's police power when alternative plausible readings of the preemption statute are possible. In this instance there are alternative plausible interpretations and those should apply to preserve the statute.

Plaintiffs have pled the averments of fraud of material misrepresentation, intent, and knowledge with particularity.

Further, the cases relied on by Defendants concern consumers not **ESPs**. **ESPs** are

third party representatives appointed by the legislature to represent the interests of their customers.  **B&P Code** §17529.5(b)(1)(A)(ii).

       **a.**       **Prior decisions are based on actions by consumer plaintiffs not on cases involving ESPs.  The courts have ruled that statutes creating third party representatives can rely on the interests of the general public to establish harm.  Therefore as third party representatives ESPs can rely on the interests of the general public to establish harm.**

Defendants argue that **B&P Code** *§*17529.5 is preempted unless it sounds in common law fraud.  They have mistakenly relied on cases involving consumer efforts to show false advertising under California law and interpreted those laws as applying equally to email service providers.

The **Hoang** Court ruled that **B&P Code** *§*17529.5 was preempted if it does not require a showing of common law fraud.  (**Hoang v. Reunion.com, Inc.,** Slip Copy, 2008 WL 4542418 at *1 and *2 (N.D. Cal., October, 2008)(courtesy copy attached) [hereafter "**Hoang I**"]); relying on **Omega World Travel, Inc. v. Mummagraphics, Inc.**, 469 F.3d 348, 353-56 (4th Cir.2006) and **Kleffman v. Vonage Holdings Corp.**, 2007 WL 1518650, *3 (C.D. Cal. 2007)(courtesy copy attached).

The **Hoang** Court defined common law fraud as misrepresentation, knowledge (scienter), intent to defraud, justifiable reliance and damages.  (**Hoang v. Reunion.com, Inc.**, Slip Copy, 2008 WL 4542418 at *2 (N.D. Cal., 2008).

**Hoang v. Reunion.com, Inc.**, Slip Copy, 2008 WL 4542418 (N.D. Cal., 2008) and **Kleffman v. Vonage Holdings Corp.**, 2007 WL 1518650 (C.D. Cal. 2007) both involve individual consumers bringing actions under *§*17529.5.  Further the **Kleffman** case is on appeal to the 9th Circuit who has sent the issue of whether the use of multiple domains is a violation of *§*17529.5 for certification to the California Supreme Court.  **Kleffman v. Vonage Holdings Corp.**, 551 F.3d 847 (9th Cir., 2008).  Apparently the 9th Circuit does not agree with the lower court as to the preemption issue, as the issue of multiple domain names being a violation would be moot if the statute were preempted without a showing of common law fraud.

**Omega World Travel, Inc. v. Mummagraphics, Inc.**, 469 F.3d 348 (4th Cir.2006)

involves a small company, Mummagraphics, Inc., that is in the Internet Technology service business and hosts web pages, registers domain names, designs web pages and logos, and sets up computer servers.  Note that Mummagraphics, Inc. does not claim it is an email service provider and complained of emails sent to their email address at "inbox@webguy.net".   The Plaintiff in the ***Omega*** case based its causes of action on the emails the company had received, not emails received as an email service provider.  ***Id.*** at 350.  Further, the plaintiff in ***Omega*** failed to show how the emails were in violation of the Oklahoma statute, as the header information clearly indicated they were from the defendants.  The ***Omega*** case was decided on the language of the Oklahoma statute  Okla. Stat. tit. 15, §§ 751 et seq. that is clearly a state anti-spam law.  The decision was not based on the language of ***B&P Code*** §17529.5 which is part of California's false advertising laws.  Therefore this case can be distinguished as not dealing with the same type of plaintiff or the same statute as the present case.

Defendants' reliance on ***ASIS Internet Services v. Optin Global, Inc.,*** No. C05-5124, 2008 WL 1902217, at *19 (N.D. Cal. April 29, 2008) (courtesy copy attached) is completely misplaced as the quotation cited by Defendants is a comment by that Court and not part of its ruling.  The District Court in ***ASIS Internet Services v. Optin Global, Inc.,*** based its ruling on the plaintiff failing to show that the defendant was either the sender or procurer of the email advertisements at issue, not on the issue of preemption.  ***Id.*** at *19.  Therefore this case offers no instruction.

Plaintiffs' ASIS and FOGGY are not consumers, they are email service providers as alleged in the **FAC** ¶¶ 11 and 12.  As such they are third party representatives appointed by the legislature to prosecute violations of the statute.  ***B&P Code*** §17529.5(b)(1)(A)(ii).

The Supreme Court has stated that third party representatives appointed by the legislature have legal rights based on the rights of others and may use the interests of the general public in establishing standing.  ***Warth v. Seldin***, 422 U.S. 490 at 500, 95 S.Ct. 2197 (U.S. 1975).

In exercising its power to define standing by statute, the Congress must "at the very least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled

to bring suit." ***Massachusetts v. E.P.A.,*** 127 S.Ct. 1438 at 1453 (2007); citing ***Lujan v. Defenders of Wildlife***, 504 U.S. 555 (1992).  The California legislature defined three parties as having standing:  the Attorney General; an electronic mail service provider; and a recipient of an unsolicited commercial e-mail advertisement.  ***B&P Code*** §17529.5(b)(1)(A).  The type of harm intended by the California legislature is harm to the consuming public from receiving false and deceptive advertisements.  (***B&P Code*** §17529.5)  **ESPs** cannot suffer the type of harm intended by the legislature.  They do not open the email advertisements, they do not respond to the emails, and they do not suffer the harm from deceptive advertisements contained in the emails.  Therefore a ruling that common law fraud is required effectively preempts the **ESP** portion of the ***B&P Code*** §17529.5 and eliminates the State's police power without a clear statement of intent by the Congress.  In fact this ruling appears to preempt the **ESP** portion of the statute in spite of the clear intent of the Congress.

First, there is no issue that **ESPs** have suffered harm as a result of the email advertisements.  All **ESPs** must receive the emails, filter the emails, carry them over their services, store the emails, and suffer consumer complaints if the email advertisements reach their customers.  Plaintiffs alleged that they received and carried the emails.  **FAC** ¶¶11-12.  If the Court does not consider these statements sufficient then Plaintiffs are prepared to amend the **FAC** with specific allegations of harm.  Therefore, every **ESP**, including Plaintiffs, suffers actual harm when they receive unsolicited email advertisements that are in violation of ***B&P Code*** §17529.5.  The cost per email to the **ESPs** is small but over time is significant and constitutes a major portion of the **ESP's** costs.  Further, the email advertisements are the cause of the harm and the courts can redress the harm by penalties allowed by the statute.

"The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . ..'" ***Warth v. Seldin*** (U.S. 1975) 422 U.S. 490 at 500, 95 S.Ct. 2197; citing ***Linda R.S. v. Richard D.*** (1973) 410 U.S. 614 at 617 and FN3; and ***Sierra Club v. Morton*** (1972) 405 U.S. 727 at 732.  The legislature has created a legal right for the **ESPs** and that right has been invaded satisfying the standing requirements of **Article III**.

Therefore **ESPs** have **Article III** standing based on the requirements of ***Lujan*** and ***Warth***.

In addition, **ESPs** are ideally situated to act as third parties in this type of matter.  Their customers are the targets of the harm.  They represent and advise their customers in various other matters concerning the internet, such as what software to use, firewall systems, etc.  They receive and carry all of the information concerning the email advertisements in question and are therefore ideally suited to collecting and processing evidence.  They are also harmed by the email advertisements.  Therefore they are an ideal representative, which is why the legislature chose the **ESPs** to represent the public interest in this matter.

However, this raises the issue of prudential standing, is an **ESP** the type of person the statute is intended to protect?  Again the Courts have resolved this issue.  "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules." ***Warth v. Seldin***, 422 U.S. 490 at 500, 95 S.Ct. 2197 (U.S. 1975) .  The Court has stated that so long as the plaintiff can state a clear and actual harm to itself then:

> "so long as this requirement is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim." ***Warth v. Seldin***, 422 U.S. 490 at 500, 95 S.Ct. 2197 (U.S. 1975) (citations omitted).

Therefore, where the legislature has provided third party standing, the representative can rely on the interests of others and even on the interests of the general public.

If common law fraud is required to avoid preemption of ***B&P Code*** §17529.5 under the **CSA** and an **ESP** must show justifiable reliance and damages, then as a third party appointed by the legislature an **ESP** can rely on the interests of the general public to show justifiable reliance and damages.  This is clearly the intent of the legislature.  It is clearly not the intent of the legislature that an **ESP** show reliance and damages for themselves on each and every email advertisement, as this would be impossible and eviscerate the statute.  Likewise, there is also a clear intent by Congress to preserve the police power of the states as indicated in the saving paragraph of 15 ***USC*** §7707(b)(2).  Without a clear showing of intent to preempt the

1    Court should not eliminate the police power of the State.  *Altria Group, Inc. v. Good*, 129 S.

2    Ct. 538 at 543 (U.S. 2008).

3        Application of the *Hoang* Court's rationale to third party **ESPs** is incorrect since the

4    state and federal legislature can create standing where none existed, and use the harm

5    suffered by the general public to satisfy the harm elements required by *Article III* and

6    prudential standing.  California has done that here and the Court should apply the interests of

7    the general public to supply the elements of reliance and damages to find common law fraud.

8        **b.**    **A finding that *B&P Code §*17529.5 requires a showing of common law**

9            **fraud effectively preempts the statute as to email service providers**
     **and since there are plausible readings that will save the statute, such**

10           **a ruling is contrary to the instructions of higher courts.**

11       If the Court does not accept the use of the interests of the general public, then is ***B&P***

12   ***Code*** §17529.5 as it applies to email service providers preempted without a showing of

13   common law fraud?

14       The *CSA* specifically preempts a State statute that regulate emails unless it "prohibits

15   falsity or deception".  (15 *USC* §7707(b)(1).)

16           When addressing questions of express or implied pre-emption, we
     begin our analysis "with the assumption that the historic police

17           powers of the States [are] not to be superseded by the Federal Act
     unless that was the clear and manifest purpose of Congress." *Altria*

18           *Group, Inc. v. Good*, 129 S. Ct. 538 at 543 (U.S. 2008);

19       It must be noted that the *CSA* does not use the term fraud in section 15 *USC*

20   §7707(b)(1).  The application of common law fraud is a construction created by the courts in

21   interpreting the statute.  See *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d

22   348 at 353–354 (4th Cir.2006).   This is a problem as this construction does not preserve the

23   statute as it applies to **ESPs**, unless **ESPs** are allowed to use the interests of the general

24   public to satisfy the elements of justifiable reliance and damages.  None of the prior courts

25   have considered this problem.  In addition, there are other plausible constructions of the

26   requirements in 15 *USC* §7707(b)(1) that do preserve the **ESP** portion of the statute and they

27   should be considered.

28       The *Hoang* Court defined common law fraud as misrepresentation, knowledge

1   (scienter), intent to defraud, justifiable reliance and damages. (*Hoang v. Reunion.com, Inc.*,

2   Slip Copy, 2008 WL 4542418 at *2 (N.D. Cal., 2008); citing *Alliance Mortgage Co. v.*

3   *Rothwell*, 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601] (Cal. 1995).)   While

4   *Alliance* provides a definition of fraud, the issues in the *Alliance* case revolve around

5   fraudulent disclosure of mortgage terms and a long series of field preemption cases involving

6   mortgage cases and the banking industry.  It is therefore unclear how instructive the *Alliance*

7   case is in considering false advertisements.  This is especially true given that the California

8   Appellate courts and the 9th Circuit have specifically reviewed the issue of fraud as it relates to

9   false advertising.   There is another problem with this analysis, if an **ESP** or a consumer

10  opened the email, responded, and then suffered damages based on reliance the Defendant

11  would have an absolute defense against an action brought under *B&P Code* §17529.5, as this

12  would amount to <u>solicitation</u>.  Solicitation provides a defense to the advertiser for the violations,

13  creating an illogical conclusion – there is no action without reliance and damages, but if the

14  recipient responds there is no violation because it creates a defense of solicitation.  Therefore

15  it is illogical to assume the legislature actually intended for a recipient to open the false

16  advertisements and respond.

17      The Court in *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 at 682 [38

18  Cal.Rptr.3d 36] (Cal. Ct. App. 2006) discussing the California False Advertising Law (*B&P*

19  *Code* §17500 et seq.) stated: "To prevail on a false advertising claim, a plaintiff need only

20  show that members of the public are likely to be deceived."  (Citing *Freeman v. Time, Inc.* (9th

21  Cir.1995) 68 F.3d 285, 289).  The *Colgan* Court went on to say that it was not persuaded by

22  arguments referring to the importation of requirements from federal Lanham Act cases that

23  required a showing that misleading statements "must be shown to have deceived a significant

24  portion of the recipients."  (*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 at

25  682 [38 Cal.Rptr.3d 36] (Cal. Ct. App. 2006).)  The Court stated that "the primary evidence in a

26  false advertising case is the false advertising."  (*Ibid.*; citing *Brockey v. Moore*, 107

27  Cal.App.4th 86, 100 [131 Cal.Rptr.2d 746] (Cal. Ct. App. 2003).)  The California decisions and

28  the 9th Circuit *Freeman* case indicate that a showing of justifiable reliance and damages are

1  not required to show fraud in false advertisements.

2  The **Hoang I** Court based its ruling on the requirement that **CSA** preempts a State

3  statute regulating emails unless the State statute "prohibits falsity or deception" in the email.

4  15 **USC** §7707(b)(1).  Note that this language does not say "*fraud*."  The **Hoang I** Court relied

5  on **Omega World Travel, Inc. v. Mummagraphics, Inc.**, (4th Cir. 2006) 469 F.3d 348, 354,

6  for the proposition that "prohibits falsity or deception" means fraud because a word is known by

7  the company it keeps.  Relying on **Jarecki v. G.D. Searle & Co.**, 367 U.S. 303, 307, 81 S.Ct.

8  1579, 6 L.Ed.2d 859 (1961); **Neal v. Clark**, 95 U.S. 704, 708-09, 24 L.Ed. 586 (1877).  In

9  doing so both the **Omega** Court and the **Hoang I** Court ignored the ruling in **Warre v.**

10  **Commissioner of the Social Security Administration**, 439 F.3d 1001, 1005 (9th Cir. 2005).

11  The **Warre** Court held that use of different language in different sections of a statute

12  demonstrates intent to convey a different meaning.

13  Congress clearly knows the difference between "falsity and deception" and common law

14  fraud.  In the very next section, 15 **USC** §7707(b)(2), Congress requires a showing of fraud.

15  Therefore, if Congress intended a showing of common law fraud in section 15 **USC**

16  *§*7707(b)(1), they would have said so.  Note also that falsity (or misrepresentation) and

17  deception are elements of fraud.  Therefore, it is likely the legislature meant a lesser included

18  offense and not common law fraud.

19  The U.S. Supreme Court has ruled that when the courts are reviewing areas that deal

20  with preemption of the State's police power, especially in areas where the States traditionally

21  have exerted their power such as advertising, they should not supersede the State without a

22  clear showing of intent by the Congress. (**Altria Group, Inc. v. Good**, 129 S. Ct. 538 at 543

23  (U.S. 2008); citing **Rice v. Santa Fe Elevator Corp.**, 331 U.S. 218, 230 (1947) ; **Medtronic,**

24  **Inc. v. Lohr**, 518 U.S. 470 at 485 (1996); and **Lorillard Tobacco Co. v. Reilly**, 533 U.S. 525

25  at 541-542 (2001).)  Therefore, when the text of a federal statute can be read in more than one

26  plausible way, the courts tend to accept the reading that disfavors preemption.  (**Altria Group,**

27  **Inc. v. Good**, 129 S.Ct. 538 at 543(U.S. 2008); citing **Bates v. Dow Agrosciences LLC**, 544

28  U.S. 431 at 449 (2005).)

1    In its subsequent decision after allowing a first amended complaint, the ***Hoang II*** Court

2  restated the earlier decision basing the requirement of common law fraud on the requirement

3  for a showing of harm under **Article III** standing as stated in ***Lujan v. Defenders of Wildlife***,

4  504 U.S. 555 at 560 (1992) (requiring a showing of actual harm).  (***Hoang v. Reunion.com,***

5  ***Inc.*** Slip Copy, 2008 WL 5423226 (N.D. Cal., December, 2008))

6    The ***Hoang II*** Court therefore appears to preserve ***B&P Code*** §17529.5, reading the

7  statute to require a showing of common law fraud based on a need to show harm as required

8  by **Article III** and ***Lujan***.

9    However, this is a deceptive conclusion.  A reading of a requirement to establish

10  common law fraud effectively preempts ***B&P Code*** §17529.5 as it applies to **ESPs** and

11  possibly the State Attorney General, unless they can rely on the interests of the general public.

12    Further, in the recent decision by the California Supreme Court in ***Meyer v. Sprint***

13  ***Spectrum L.P.***, --- Cal.Rptr.3d ----, 2009 WL 197560 (Cal. Supreme Court 2009)(courtesy

14  copy attached) the Court ruled that a showing of actual damages was required for a consumer

15  to bring an action under ***California Civil Code*** §1770.  In doing so the Court distinguished the

16  language of the statute:

> Thus, the statute provides that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result. If the Legislature had intended to equate "any damage" with being subject to an unlawful practice by itself, it presumably would have omitted the causal link between "any damage" and the unlawful practice, and instead would have provided something like "<u>any consumer who is subject to a method, act, or practice declared to be unlawful by Section 1770 may bring an action</u>" under the CLRA.  ***Meyer v. Sprint Spectrum L.P.***, --- Cal.Rptr.3d ----, 2009 WL 197560 at *3 (Cal. Supreme Court 2009) (emphasis added).

The language of ***B&P Code*** §17529.5(b)(1)(A) is very similar to the language suggested by the Court:

> In addition to any other remedies provided by any other provision of law, the following may bring an action against a person or entity that violates any provision of this section:

Note there is no reference to a requirement for damage of any kind in the language of

1    ***B&P Code*** §17529.5.  The California Supreme Court's guidance indicates that no showing of

2    harm is required to bring an action under *§17529.5*.

3          However, if the definition of falsity and deception is common law fraud then that portion

4    of ***B&P Code*** *§17529.5* relating to **ESPs** is effectively preempted, unless they are allowed to

5    rely on the interests of the general public.  If the **ESPs** are not allowed to rely on the interest of

6    the public, then is there another plausible reading of the statutory language that does not

7    cause preemption?

8          Clearly there is.  The interpretation by the California courts in ***Colgan v. Leatherman***

9    ***Tool Group, Inc.***, 135 Cal.App.4th 663 at 682 [38 Cal.Rptr.3d 36] (Cal. Ct. App. 2006);

10   ***Brockey v. Moore***, 107 Cal.App.4th 86, 100 [131 Cal.Rptr.2d 746] (Cal. Ct. App. 2003); and

11   supported by ***Freeman v. Time, Inc.***, 68 F.3d 285, 289 (9th Cir.1995), require a showing of

12   falsity and deception in the advertisement and do not require justifiable reliance and damages.

13   Therefore based on those courts opinions, only a showing of misrepresentation, knowledge,

14   and intent would be required to show a violation of ***B&P Code*** 17529.5.  This reading is

15   plausible and does not preempt the portion of ***B&P Code*** *§17529.5* relating to **ESPs**.

16         Further the 9th Circuit has ruled that there is a material difference between an

17   "intentionally false statement" and "fraud."  (***Hart v. McLucas***, 535 F.2d 516 at 519 (9th Cir.,

18   1976); also see ***Horizon Mut. Sav. Bank v. Federal Sav. & Loan Ins. Corp.***, 674 F.2d 1312

19   (9th Cir. 1982) (upholding ***Hart*** and relating the ruling to an interpretation of an FSLIC statute.)

20   The ***Hart*** Court held that an "intentional false statement" consisted of "falsity, materiality and

21   knowledge", deciding that false statements are a "lesser included offense" within fraud.  ***Hart v.***

22   ***McLucas***, 535 F.2d 516 at 519 (9th Cir., 1976).  The ***Hoang II*** Court attempted to distinguish

23   the ***Hart*** ruling because it rules on whether the government must prove reliance, and does not

24   discuss whether the same rule would apply to consumers.  The court made no mention of

25   **ESPs**.  (***Hoang v. Reunion.com, Inc.***,  Slip Copy, 2008 WL 5423226 at FN3 (N.D. Cal.,

26   December, 2008).)  This analysis ignores that the purpose of the act in question (14 **CFR**

27   §61.59, Falsification, reproduction, or alteration of applications, certificates, logbooks, reports,

28   or records) was to protect the public from pilots who make false statements, just as ***B&P Code***

1  §17529.5 is intended to protect the public from advertisers who make false statements.

2  Further the **Hart** Court based its ruling on the fact that both "intentionally false

3  statement" and fraud are included in the statute, arguing that language in a statute is not just

4  "surplusage."  (See **Hart v. McLucas**, 535 F.2d 516 at 519 (9th Cir., 1976); also see 14 **CFR**

5  §61.59(a)(1).)  This is exactly the same case that exists in the **CSA** where Congress used

6  "falsity or deception" and then used the term "fraud" immediately following.  (See 15 **USC**

7  §7707(b)(1) and (b)(2).)  "[I]t is presumed that every phrase serves a legitimate purpose and,

8  therefore, constructions which render regulatory provisions superfluous are to be avoided."

9  **Hart v. McLucas**, 535 F.2d 516 at 519(9th Cir., 1976); citing **Jay v. Boyd**, 351 U.S. 345, 360-

10  61 (1956).  This is an instance where legislative language relating to falsity can be interpreted

11  other than as common law fraud, especially where Congress has made its intent clear by using

12  separate terms.

13  Defendants' reliance on **S. Rep NO. 108-102**, at 21-22 on page 12 of its Motion is

14  misplaced as the quotation provided, "fraud or deception", does not correspond with the actual

15  language used in the bill: "falsity or deception" and then the use of the term "fraud" in the next

16  section.  (15 **USC** §7707(b)(1) and (b)(2)).

17  The California Courts have relied on federal rulings in the past indicating a showing of

18  reliance and damages is not necessary to prove false advertising in actions brought by the

19  FTC:

20      Moreover, …"the primary evidence in a false advertising case is the
        advertising itself." The United States Supreme Court has rejected a
21      claim that survey evidence was required in the analogous context
        of the Federal Trade Commission's regulation of deceptive
22      advertising. ( Federal Trade Com. v. Colgate-Palmolive Co. (1965)
        380 U.S. 374, 391-392 [, 85 S.Ct. 1035, 1046, 13 L.Ed.2d 904, 918]
23      ["when the Commission finds deception it is also authorized, within
        the bounds of reason, to infer that the deception will constitute a
24      material factor in a purchaser's decision to buy"]; see Resort Car
        Rental System, Inc. v. Federal Trade Com. (9th Cir.1975) 518 F.2d
25      962, 964 [no need to consider objections to consumer testimony
        because it "merely supported the inferences which can logically be
26      drawn by scrutinizing the advertising alone"].) (**Brockey v. Moore**
        (Cal.App. 3 Dist., 2003) 107 Cal.App.4th 86 at 100.)
27
28  This indicates that a standard for finding false advertisements based on a review of the

advertisement itself is the more acceptable rule per the U.S. Supreme Court. Especially where the entity bringing the action is not the consumer. As this rule is already applied nationwide, it cannot represent an additional burden if the states apply the same rule.

Most important, this is a standard that can be understood and applied to every business anywhere in the fifty states where a real business might send an email advertisement to consumers in California. Avoiding the use of false header information and misleading subject lines that are intended to deceive consumers is no problem for most businesses. Real advertisers with real products and services to sell are more than happy to have their name on their advertisements. Real advertisers do not go out of their way to conceal their true identity. Real advertisers do not use con games to try and trick consumers into going to their web sites. If a real advertiser is offering a free product, they are usually very happy to present the terms up front so that they don't offend the consumer and lose them as customers. Real advertisers do not make false representations and then conceal the truth about those representations repeatedly. As with most claims of false advertising, the facts of the case are determinative. However, it is sufficient warning and fair to require a legitimate advertiser not to send advertisements with: material misrepresentations; with an intent to deceive; and knowledge of what is being done. It is within the State's police power to determine that these actions represent a civil and criminal wrong, and that the consumer's representative in enforcing the requirements are the email service providers.

Therefore the Court should accept the definition of falsity and deception provided by the California Appellate Courts and the 9th Circuit as misrepresentation, intent, and knowledge. The Court should either: 1) accept the premise that **ESPs** can rely on the interests of the general public to show reliance and damages; or 2) not impose a showing of justifiable reliance and damages resulting from reliance. Preemption is only required where there is a clear showing of Congressional intent. The **CSA** says nothing that requires common law fraud.

Therefore a ruling that relies on common law fraud is not necessary or desirable if it has the effect of preempting the State statute it is trying to save.

**2.    Plaintiffs have pled all of the elements of *B&P Code* §17529.5 and has pled the averments of fraud with particularity.**

    **a.    Plaintiffs have pled the elements of *B&P Code* §17529.5 sufficient to meet the notice requirements of the federal pleading standard.  *FRCP* Rule 8**

Defendants argue that Plaintiffs' claim fails because Plaintiffs have failed to allege reliance and loss of money damages.  Defendants are incorrect as Plaintiffs may rely on the interests of the general public for these elements of fraud or alternatively these elements are not required as they are not elements of the averments of fraud required by *B&P Code* §17529.5 to avoid preemption by the *CSA.* (See discussion above).

Defendants' reliance on district court decisions do not overcome the standing precedent in *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995), or the statements of the California Supreme Court in *Meyer v. Sprint Spectrum L.P.*, --- Cal.Rptr.3d ----, 2009 WL 197560 (Cal. Supreme Court 2009)(as discussed above).   These precedent cases clearly state that a showing of damages is not required if the legislature does not specify damages in the statute.  As *B&P Code* §17529.5 does not specify a requirement for a showing of damages, then this requirement would impose a standard not currently accepted by the higher courts.

Defendants are incorrect in their application of *B&P Code* §17535 and Proposition 64. The statute states:  "Actions for <u>injunction under this section</u> may be prosecuted by … by any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter."  *§*17535.   There are two problems with reliance on this statutory language:

    1)    the section referred to is *§*17535 and does not apply to *§*17529.5; and

    2)    *§*17535 section only deals with requests for injunction under the chapter. *§*17535 is within the Code Article 2.0 "PARTICULAR OFFENSES" while *§*17529.5 is in Article 1.8. "RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL ADVERTISERS", a completely different section of the *B&P Code*.

As Plaintiffs have not requested an injunction, did not bring an action under *§*17535, and brought their action under *§*17529.5, this argument is without merit.  Further, there is no

language that suggests the legislators intended to revoke the separate remedies available under other portions of the **B&P Code** with the language of §17535.  Therefore, §17535 does not apply to cases brought under §17529.5.

All of the cases cited by Defendants deal with consumer cases under §17200, §17500 and **California Civil Code** §1770, primarily dealing with injunctions and do not apply to an **ESP** as a third party representative assigned special status under §17529.5 praying for liquidated damages.

In **Laster v. T-Mobile USA, Inc.**, 407 F.Supp.2d 1181, at 1183 (S.D.Cal., 2005), plaintiff is a consumer who sought <u>injunctive</u> relief under §17200, §17500 and **California Civil Code** §1770.  All of these statutes contain specific language requiring a showing of actual damages by the consumer for injunctive relief.  Plaintiffs in this matter are not consumers and they have not sought injunctive relief.  Therefore **Laster** is not relevant to this matter.  In **True v. American Honda Motor Co., Inc.**, 520 F.Supp.2d 1175, at 1182 and 1183 (C.D.Cal.,2007) the Court denied Defendants' Rule 12(b)(6) motion stating that the class action plaintiff had relied on the interests of the general public who had purchased the product in question and that assertion was sufficient.  Finally, **Cattie v. Wal-Mart Stores, Inc.**, 504 F.Supp.2d 939 (S.D.Cal., 2007) concerns an individual consumer plaintiff seeking injunctive relief and damages under §17200, §17500 and **California Civil Code** §1770, and therefore does not apply.  In contrast to the cases cited by Defendants is **Anunziato v. eMachines, Inc.**, 402 F.Supp.2d 1133 (C.D.Cal., 2005).  The Court in **Anunziato** distinguishes the language of the different statutes and holds that the language of §17200 and §17500 does not require that a consumer show reliance but only actual harm.  **Ibid.** at 1137 – 1139.  These cases provide no support to the contention that an **ESP** representing the public and their customers under a special grant of standing by the legislature must show reliance and resulting damages.

Defendants' argue that the consumer is notified that there is a fee required on the first web page that the consumer is taken to from the email.  This may or may not be true, as the pages changed during the life of this suit.  The information cited by Defendants, as in **FAC** Exhibit C (page 5 of 26 is page 3 of the web page), actually appears on the third page of four

of the first web page.  In other words the consumer must scroll down three pages to find the disclaimer.  Even on the third page the disclaimer is hidden in other text.  This disclaimer in no way meets the requirement of 16 **CFR** part 251 that requires that a conspicuous and clear notice occur on the same page as the free offer that occurred in the email.  As such this notice does not meet the reasonable consumer standard required by California.  ***Colgan v. Leatherman Tool Group, Inc.*** (2006) 135 Cal. App. 4th 663 at  682 [38 Cal. Rptr. 3d 36] also see ***Lavie v. Procter & Gamble Co.*** (2003) 105 Cal.App.4th 496, 512-513 [129 Cal.Rptr.2d 486].

As to the email advertisements attached as Exhibit A to the original complaint containing a fee disclaimer, Plaintiffs removed those emails as they appeared to be compliant with the reasonable consumer standard in the **FAC**.  Plaintiffs also removed all of the email advertisements containing a valid disclaimer from their **FAC**.  That is why the original complaint alleged 10,225 email advertisements for ASIS (Complaint ¶12) and the **FAC** alleged only 2,881 for ASIS (**FAC** ¶13) non-compliant email advertisements.

Under the federal pleading standard a plaintiff is only required to plead: "a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought…"  ***FRCP*** Rule 8(a)(2) and (3).  Plaintiffs have pled every element of a cause of action under ***B&P Code*** §17529.5.  Therefore, Plaintiffs' **FAC** is sufficient to meet the requirements of notice pleading.  If the Court finds that the pleading is insufficient in any manner than Plaintiffs' will amend with the Court's instruction.

### b.  Plaintiffs have pled the averments of fraud with particularity as required by *FRCP* Rule 9.

Defendants' claim that Plaintiffs' have not pled the averments of fraud with particularity. Defendants' are mistaken.  In the 9th Circuit: "a pleading satisfies the particularity requirement if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  ***Deutsch v. Flannery***, 823 F.2d 1361 at 1365 (9th Cir. 1987); (quotations omitted.)  Note that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  ***FRCP*** Rule 9(b).  A plaintiff must plead the "who,

1   what, when, where, and how … plaintiff must set forth more than the neutral facts necessary to

2   identify the transaction. The plaintiff must set forth what is false or misleading about a

3   statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 at 1106 (9th

4   Cir.,2003). (citations omitted).

5           Plaintiffs alleged that the emails were sent on behalf of Defendants' Vistaprint to

6   Plaintiffs ASIS and FOGGY. (*WHO*) **FAC** ¶13.  The fact that the sent to email accounts has

7   been redacted is not relevant as Plaintiffs' have alleged they received the emails and the court

8   must accept the allegations as true at the pleading stage.  *Tellabs, Inc. v. Makor Issues &*

9   *Rights, Ltd.*, 551 U.S. 308 , 127 S.Ct. 2499 at 2502 (U.S.,2007).  Plaintiffs alleged the emails

10  contained misrepresentations with misleading subject lines in violation of *B&P Code* §17529.5

11  (*WHAT*).  **FAC** ¶ 9.   Plaintiffs alleged the dates when the email advertisements were received

12  (*WHEN*).  **FAC** ¶13.  The exact dates of when each email can be determined is on the actual

13  emails.  If the Court rules this is necessary, Plaintiffs' can attach an entire set of redacted

14  emails to an amended complaint, however this seems excessive at the pleading stage.

15  Plaintiffs alleged they received the email advertisements at their protected computers

16  (*WHERE*).  **FAC** ¶13.

17          Plaintiffs alleged that the subject lines were material misrepresentations because they

18  appear to offer a free gift and provide no explanation of what the recipient must do to receive

19  the free gift (*HOW*). **FAC** ¶19.  No effort is made in the body of the email to correct the

20  misrepresentation.  The body of the emails appear to be constructed so as to conceal the true

21  purpose of the email advertisements.  In fact the recipient must go to Defendants web site to

22  find out what the real requirements are to get the free gifts.  The real requirements state that a

23  party must provide extensive personal information, a credit card and pay fees for shipment.

24  **FAC** ¶19.   Further, though not alleged in the **FAC** there is significant evidence that

25  Defendants' then make unauthorized charges to participating consumer credit cards.

26          Plaintiffs alleged that these circumstances represent misleading statements, intent to

27  deceive and knowledge.  **FAC** ¶21.  Plaintiffs went on to explain in great detail how the

28  circumstances and the details within the subject lines and bodies of the emails represent

1   material misrepresentation, intent to deceive, and knowledge.  **FAC** ¶¶21–25.

2        Plaintiffs explained that the California Courts have found that the FTC has used the

3   reasonable consumer standard adopted by California in claims for false advertising in

4   development of the FTC's rules concerning false advertising and that those rules apply.

5   (***Lavie v. Procter & Gamble Co.*** (2003) 105 Cal.App.4th 496, 512-513 [129 Cal.Rptr.2d 486]).

6   Indicating a violation of the FTC rules in an email subject line is a violation of the subject line

7   portion of ***B&P Code*** §17529.5(a)(3).  **FAC** ¶19.

8        Plaintiffs submit they have alleged facts sufficient to apprise Defendants of the type of

9   the averments of fraud as required by Rule 9(b) and supported those allegations with

10  significant evidence.   Plaintiffs believe that Defendants have been provided information

11  sufficient to understand Plaintiffs' complaint and that they can respond.   Therefore, the Court

12  should deny Defendants' Rule 12(b)(6) motion.

13                          **SINGLETON LAW GROUP**

14

15  Dated:       March 4, 2009          _/s/ Jason K. Singleton_____

16                                      Jason K. Singleton
                                        Richard E. Grabowski
17                                      Attorneys for Plaintiffs, **ASIS INTERNET SERVICES
                                        and JOEL HOUSEHOLTER, dba FOGGY.NET**

18

19

20

21

22

23

24

25

26

27

28