COOLEY GODWARD KRONISH LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
JOSEPH S. LEVENTHAL (221043) (jleventhal@cooley.com)
MICHELLE L. WASSERMAN (254686) (mwasserman@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:     (858) 550-6000
Facsimile:       (858) 550-6420

Attorneys for Defendant
VISTAPRINT USA, INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation, and JOEL HOUSEHOLTER dba KNEELAND ENGINEERING, dba FOGGY.NET,<br><br>Plaintiffs,<br><br>v.<br><br>VISTAPRINT USA, INCORPORATED, a Delaware corporation, VISTAPRINT USA LIMITED, a Bermuda Company, aka VISTAPRINT USA.COM, aka VISTAPRINT USA, and DOES ONE through FIFTY, inclusive,<br><br>Defendants. | Case No.  08-CV-5261-SBA<br><br>**VISTAPRINT USA, INCORPORATED'S REPLY TO PLAINTIFFS' OPPOSITION TO VISTAPRINT USA'S MOTION TO DISMISS**<br><br>Date:        April 28, 2009<br>Time:       1:00 p.m.<br>Judge:     Hon. Saundra B. Armstrong<br>Place:      Courtroom 3 |

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..................................................................................................... 1
II. ARGUMENT ............................................................................................................. 2
    A. Plaintiffs Rely On Improper, Irrelevant Issues And Character Attacks ................ 2
    B. The FAC Should Be Dismissed With Prejudice Because The Sole Claim is Preempted ............................................................................................................. 4
        1. Congress clearly meant to preempt claims, like plaintiffs', not predicated on common law fraud ............................................................ 4
            a. CAN-SPAM preempts state laws regulating commercial email that are not predicated on common law fraud ...................... 5
            b. Plaintiffs' status as Email Service Providers makes no difference to the standards for federal preemption. ........................ 8
            c. The FAC contains no allegations of common law fraud ................ 9
        2. Plaintiffs misstate the availability of the CAN-SPAM Act's remedy ....... 10
    C. Even if Not Preempted, the FAC Fails to State a Claim Under Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 11
        1. Plaintiffs fail to allege reliance and lost money or property, essential elements of the claim after Proposition 64 ................................ 11
        2. The FAC should be dismissed because it fails to plead fraud with particularity ............................................................................................. 14
III. CONCLUSION ....................................................................................................... 15

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

i.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altria Group Inc., v. Good*,
    129 S. Ct. 538 (2008) .................................................................................................... 7, 8

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................................................ 12

*ASIS Internet Servs. v. Optin Global, Inc.*,
    No. C-05-05124, 2008 WL 1902217 (N.D. Cal. April 28, 2008) ............................... 5, 10, 11

*Branick v. Downey Savings & Loan Ass'n*,
    39 Cal. 4th 235 (2006) ................................................................................................ 12, 13

*Buckland v. Threshold Enterprises, Ltd.*,
    155 Cal. App. 4th 798 (2007) ............................................................................................ 13

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................................... 12

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................................................... 13

*Hoang v. Reunion.com, Inc.*,
    No. C08-3518, 2008 WL 4542418 (N.D. Cal. October 6, 2008) ..................................... 5, 6

*Hoang v. Reunion.com, Inc.*,
    No. C08-3518, 2008 U.S. Dist. LEXIS 103659 (N.D. Cal. December 23, 2008) ................ 6

*Kleffman v. Vonage Holdings Corp.*,
    No. CV 07-2406, 2007 WL 1518650 (C.D. Cal. May 23, 2007) ................................. 5, 6, 8

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ............................................................................. 12

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009) ...................................................................................................... 13

*Moore v. Kayport Package Exp., Inc.*
    885 F.2d 531 (9th Cir. 1989) ............................................................................................. 15

*MySpace Inc. v. Wallace*,
    498 F. Supp. 2d 1293 (C.D. Cal. 2007) ............................................................................. 10

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) ............................................................................................. 14

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

**VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA**

*True v. Am. Honda Motor Co.*,
    520 F. Supp. 2d 1175 (C.D. Cal. 2007) ............................................................................... 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................................ 10

*Warth v. Seldin*,
    422 U.S. 490 (1975) .............................................................................................................9

*Wiener v. Dannon Co.*,
    No. CV-08-415, 2009 U.S. Dist. LEXIS 12883 (C.D. Cal. 2009) ..................................... 12

**STATUTES**

15 U.S.C.
    § 7701(a)(11) .................................................................................................................. 6, 8
    § 7706(g)(1) ....................................................................................................................... 10
    § 7707 .................................................................................................................................. 7
    § 7707(b)(1) ........................................................................................................................ 6

47 U.S.C.
    § 231(e)(4) ......................................................................................................................... 10

Cal. Bus. & Prof. Code
    § 17500 .................................................................................................................. 11, 13, 14
    § 17529.5 ................................................................................................................ 4, 11, 13
    § 17535 ....................................................................................................................... 11, 13

Cal. Civ. Code
    § 1770 ................................................................................................................................ 13

**RULES**

Federal Rule of Civil Procedure
    9(b) ................................................................................................................. 2, 12, 14, 15
    12(b)(6) ......................................................................................................................... 2, 12

**OTHER AUTHORITIES**

S. Rep. No. 108-102 (2003) .................................................................................................... 6, 8

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

## I. INTRODUCTION

Plaintiffs' Opposition fails to address the main issue in VistaPrint USA, Incorporated's ("VistaPrint USA") motion to dismiss: that plaintiffs' sole claim must be dismissed with prejudice because it is preempted by the CAN-SPAM Act. The Opposition principally sets forth an attack of VistaPrint USA's alleged legal abuses and business practices that is neither accurate nor relevant to the motion to dismiss.

The Opposition then argues that the California legislature intended to carve out an exception to preemption for Email Service Providers ("ESPs") like themselves. But the California legislature's intent is irrelevant to whether Congress intended to preempt a particular statute, which it did when it passed the CAN-SPAM Act to create a single, nationwide standard for commercial email regulation. As a result, the CAN-SPAM Act preempts all state statutes that regulate commercial email unless those statutes are grounded in traditional notions of fraud. Plaintiffs' claim under the California statute does not fall within this exception, and plaintiffs' efforts to distinguish the relevant case law is unavailing.

Plaintiffs further miss the point by spending numerous pages arguing that they meet the requirements for Article III standing, an issue not raised by VistaPrint USA, and appear to conflate the issue of Article III standing and the Court's jurisdiction with the issue of federal preemption. Plaintiffs also seek to contest preemption by relying on nomenclature, arguing that their claim is one only for "false advertising" despite the California statute's clear title and purpose to regulate commercial email.

But even if the sole claim were not preempted by the CAN-SPAM Act, the First Amended Complaint ("FAC") fails to state a claim under Rule 12(b)(6). Proposition 64 created new pleading requirements for all false advertising claims under California law. Among other things, Proposition 64 requires plaintiffs to have lost money or property as a result of the alleged false advertising. Because plaintiffs here cannot meet these pleading requirements, they now argue that they are not bringing a claim for false advertising at all. This argument is belied by plaintiffs' own Opposition, which repeatedly asserts a false advertising claim. (*See, e.g.,* Opposition at 6:10-14.) Plaintiffs then summarily dismiss the requirement that they plead their

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

claim with particularity under Rule 9(b) and rely, incredibly, on allegations that are *not* in the complaint to meet this pleading standard. Plaintiffs' arguments notwithstanding, the sole claim in the FAC is preempted and plaintiffs have otherwise failed to state a claim under California law.

## II. ARGUMENT

### A. Plaintiffs Rely On Improper, Irrelevant Issues And Character Attacks.

Tacitly conceding their deficient legal position, plaintiffs rely on character assassination and irrelevant, inaccurate allegations. VistaPrint USA is the United States subsidiary of VistaPrint Limited ("VistaPrint Limited" and sometimes collectively referred to herein together with its subsidiaries as "VistaPrint"), a global company that is a leading online retailer of customized marketing products and services for small businesses and consumers, such as business cards, letterhead, post cards, sticky notes, website design and hosting, calendars, lawn signs, and car door magnets. VistaPrint Limited has several wholly-owned subsidiaries that provide operational, technical and logistical services and support for its business. One of them is VistaPrint USA, a Delaware corporation with offices in Massachusetts that provides marketing, software development, general and administrative and similar support services for VistaPrint Limited in North America.

While VistaPrint USA, like many reputable businesses, utilizes Internet and email-based marketing efforts to promote VistaPrint Limited's products and services, plaintiffs distort VistaPrint USA's legitimate advertising to disparage VistaPrint and its business. Simply put, VistaPrint's business stands in stark contrast to the claims made by plaintiffs. VistaPrint Limited is publicly traded on the NASDAQ Stock Market. It sells its products and services worldwide via its flagship www.vistaprint.com website and 19 regionally-targeted websites, collectively serving over 120 countries around the world. VistaPrint Limited has sold its products to over 17 million customers worldwide since 2000, including more than one million in the quarter ended December 31, 2008. The Company develops and relies upon advanced proprietary technology, including 23 issued United States and foreign patents and over 40 pending United States and foreign patent applications. The company reported revenue of over $400 million for the fiscal year ending June 30, 2008. Most recently, the Company reported revenues of over $138 million for its second

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

fiscal quarter ended December 31, 2008. Notably, VistaPrint Limited enjoys the repeat business of more than 60% of its customers each quarter. It is hard to fathom how a publicly traded business that consistently markets, manufactures and delivers hundreds of millions of dollars worth of customized products and services to millions of satisfied customers worldwide is merely engaged in a "major illegal fraud activity." (Opposition at 1:6-8.)

Plaintiffs' Opposition raises numerous issues that are unresponsive to VistaPrint USA's Motion to Dismiss, and improperly moves for a default judgment against VistaPrint Limited, a Bermuda corporation. (Opposition at 1:6-3:11.) Plaintiffs inexplicably raise litigation in the Southern District of Texas entirely unrelated to the facts or law allegedly at issue in this litigation. The FAC indicates that *this* litigation involves the alleged sending of commercial electronic mail messages to "unassigned, inactive, or administrative email accounts" on plaintiffs' servers. (*See, e.g.*, FAC, ¶¶ 16-17.) Claims arising from the MDL litigation in the Southern District of Texas are wholly irrelevant to this case; if the plaintiffs believe otherwise, they should state so clearly and should move to have their action consolidated with the outstanding litigation in that District.[1]

In addition, plaintiffs misrepresent their own efforts to serve VistaPrint Limited, a Bermuda corporation. Plaintiffs never served Mr. Keane directly, contrary to plaintiffs' assertion; however, Lawrence Gold accepted service on Mr. Keane's behalf, in Lexington, Massachusetts. (Opposition, 1:25-2:1.) Mr. Gold did not accept service on behalf of VistaPrint Limited. The document attached to the Opposition is distorted by plaintiffs, who claim that said document demonstrates that Mr. Gold is "the lawful attorney in fact for VistaPrint Limited." (Opposition, 2:2-3). In reality, that document simply indicates that Mr. Gold has been granted a limited power of attorney by a handful of officers and directors of VistaPrint Limited for the sole purpose of signing and filing certain Section 16 forms with the Securities and Exchange Commission on their personal behalf. (*See* Opposition, Ex. B.) The Power of Attorney was not granted by and has no legal authority with respect to VistaPrint Limited. *Id.* Apart from their single flawed attempt to serve all defendants at the same time, VistaPrint USA is unaware of any further efforts

---

[1] Because of the improper nature of plaintiffs' argument, VistaPrint USA has filed a motion to strike concurrently herewith.

at service made by plaintiffs.

As a final demonstration of the utter irrelevance of plaintiffs' attacks, the Opposition mentions alleged wrongs perpetrated by Robert Keane four times in the opening three pages. Plaintiffs accuse him of everything from tax evasion to "major illegal fraud activity." (Opposition at 1:6-3:13.) But since plaintiffs have stipulated to the dismissal of Mr. Keane from this action (Dkt. 20), there is no place in plaintiffs' Opposition for mention of Mr. Keane, a fact which plaintiffs themselves acknowledge. (Opposition at 3:14-17) ("[b]ecause Plaintiffs do not currently have sufficient evidence to prove that Mr. Keane was personally involved in the sending of the emails…Plaintiffs have stipulated to dismiss Mr. Keane"). The Court should see plaintiffs' character attacks for what they are: an irrelevant, baseless diversion.

At bottom, none of plaintiffs' arguments regarding a motion for default judgment, efforts to serve VistaPrint Limited, or the scope of Mr. Gold's authority with respect to VistaPrint Limited has any bearing whatsoever on the merits of VistaPrint USA's motion to dismiss. They should be ignored.

**B. The FAC Should Be Dismissed With Prejudice Because The Sole Claim is Preempted.**

Plaintiffs try to save their sole claim under California Bus. & Prof. Code section 17529.5 by claiming that they have Article III standing, an issue *not* raised by VistaPrint USA, and by diverting the Court's attention to the intent of the California legislature while ignoring the United States Congress on the issue of preemption. But plaintiffs admit that they cannot allege facts that would survive preemption scrutiny. As such, the claim should be dismissed with prejudice.

**1. Congress clearly meant to preempt claims, like plaintiffs', not predicated on common law fraud.**

Plaintiffs do not contest that the CAN-SPAM Act has an explicit preemption clause and admit that, if Congress "require[d] a showing [of common law fraud, then the CAN-SPAM Act] effectively preempts the [California] statute." (Opposition at 8:21-22.) Instead, plaintiffs futilely attempt to salvage their claim by: (1) asserting that alleging fraud is not necessary to avoid preemption; (2) contending that, because they are ESPs and not consumers, the case law

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

interpreting Congressional intent and finding that claims brought under state spam laws are preempted does not (or should not) apply to them; and, (3) reading into the FAC unpled allegations of fraud. (Opposition at 8:18-9:2.) Plaintiffs' arguments fail.

### a. CAN-SPAM preempts state laws regulating commercial email that are not predicated on common law fraud.

California's federal district courts have consistently found that the CAN-SPAM Act preempts all state efforts to regulate commercial electronic mail, save those state claims based on common law fraud. *See ASIS Internet Servs. v. Optin Global, Inc.*, No. C-05-05124, 2008 WL 1902217, at *19 (N.D. Cal. April 28, 2008) (CAN-SPAM Act "permits state law to regulate the use of electronic messages only to the extent those regulations are based on traditional principles of fraud"); *Hoang v. Reunion.com, Inc.*, No. C08-3518, 2008 WL 4542418, at *5 (N.D. Cal. October 6, 2008) (Cal. Bus. & Prof. Code section 17529.5 claim preempted by CAN-SPAM Act where plaintiff failed to allege facts to support a claim of fraud); *Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007) (Cal. Bus. & Prof. Code section 17529.5 claim preempted by CAN-SPAM Act where claims were not based on traditional tort theories of fraud and plaintiff failed to allege he was misled by defendant's emails).[2] While plaintiffs assert that "this is an area of law that is being hotly contested…" (Opposition at 7:7), they cite nothing to support this rhetoric and offer no law contrary to the consistent case law that dictates dismissal of their claim. For example, plaintiffs obliquely mention the fact that Judge Chesney in *Hoang* permitted two amended complaints, implying that this supports their contention that the law is unsettled. (Opposition at 16:1-8.) But in the December 2008 *Hoang* opinion, Judge Chesney reiterated her agreement with the well-established case law that "falsity and deception, as used in [CAN-SPAM] … refer[s] to the common law tort of misrepresentation or fraud."[3] *Hoang v. Reunion.com, Inc.*, No. C08-3518,

---

[2] Plaintiffs presumptuously interpret the Ninth Circuit's appellate ruling on *Kleffman* before it is even written and argue that the case is no longer good law based on the Circuit's certification of a question to the California Supreme Court. (Opposition at 9:21-27.) Since the Ninth Circuit has not ruled on the merits of the case, plaintiffs' dismissal of this ruling is simply baseless.

[3] Judge Chesney further held that plaintiffs' claim failed regardless because they did not allege any injury as a result of defendant's "false use of a third-party domain name in the email" and

2008 U.S. Dist. LEXIS 103659, at *6 (N.D. Cal. December 23, 2008).

Plaintiffs correctly note that the CAN-SPAM Act exempts from its preemption provision state laws that "prohibit[] falsity or deception." 15 U.S.C. § 7707(b)(1). But Congress did not define the terms "falsity or deception" in the statute. *See id.* The numerous cases interpreting the preemption provision rely on the clear legislative history of the CAN-SPAM Act, which states that Congress intended to preempt "State and local statutes [and] regulations … except for statutes, regulations, or rules that target *fraud or deception* in such email.…" S. Rep. No. 108-102, at 21; s*ee also Kleffman*, No. CV 07-2406, 2007 WL 1518650, at *3; *Hoang*, No. C08-3518, 2008 WL 4542418, at *5. Congress' legislative findings, which are included in the statute, additionally indicate a reluctance to force "law abiding businesses" to comply with disparate state law regulating commercial electronic mail. 15 U.S.C. § 7701(a)(11). In light of the legislative history and Congressional findings, courts have concluded that Congress "left states room only to extend their traditional fraud prohibitions to the realm of commercial emails." *Kleffman*, No. CV 07-2406, 2007 WL 1518650, at *3.

Plaintiffs offer no legally supported alternative to this unambiguous legislative intent. Instead plaintiffs attempt to evade preemption, first, by characterizing their action as a claim under a false advertising statute instead of a claim under a commercial email statute.[4] (Opposition at 5:3-6, 14:17-15:1.) Relying on this erroneous assumption, they further claim that a statute regulating deceptive advertising is not preempted by the CAN-SPAM Act because it is not a statute regulating email. (Opposition at 4:26-6:14, 14:17-15:1.) But simply because the California legislature placed sections 17529 *et seq*. within the larger false advertising law, there is

---

therefore did not have Article III standing to bring the claim. *Hoang*, No. C08-3518, 2008 U.S. Dist. LEXIS 103659 at *10.

[4] Despite plaintiffs' attempts to characterize their claim as one for false advertising, they appear confused as to their own allegations. Plaintiffs attached to their complaint various documentation that allegedly supported their claim. VistaPrint USA pointed out in its motion that plaintiffs' own evidence shows that customers are made aware of the nominal shipping and processing fee on the very first page of the website a customer views when they click through the email. (FAC, Ex. C at 1.) Plaintiffs now confusingly allege that page one of their Exhibit "is page 3 of the web page" and admit that the vast majority of emails that they allegedly received from VistaPrint USA complied in all respects with California's false advertising laws. (Opposition at 21:26-22:14.)

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

6.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

no question that the California legislature intended the statute at issue in the FAC to regulate commercial email. Indeed, the California legislature entitled this part of the code "Restrictions on Unsolicited Commercial Email Advertisers." As plaintiffs bring their claim under state law and based on their receipt of commercial email, their claim is clearly subject to preemption by the CAN-SPAM Act. 15 U.S.C. § 7707(b) (preempting state laws that "expressly regulate[] the use of electronic mail to send commercial messages").

In a further effort to defeat preemption, plaintiffs rely on the elements of California's false advertising law and claim that the ability to state a cause of action under the state statute avoids preemption. (Opposition at 17:8-15.) But given Congress' specific preemptive intent, the elements of false advertising under California law are inapposite. Federal preemption is a question of federal, rather than state, law and "[t]he purpose of Congress is the ultimate touchstone in every preemption case." *Altria Group Inc., v. Good*, 129 S. Ct. 538, 543 (2008).[5] Plaintiffs' ability to state a false advertising claim under California law is therefore unpersuasive.

Instead of acknowledging that they are required to plead the elements of fraud, plaintiffs argue that Congress intended to save some "lesser … offense" from preemption. (Opposition at 15:17-18.) But plaintiffs are unable to cite a single case interpreting the CAN-SPAM Act that supports this contention. And if plaintiffs' novel interpretation were adopted by the Court, it would undermine the explicit intent of Congress to create a single national standard for commercial electronic mail. *See* S. Rep. No. 108-102, at 21-22. Rather than permit states to simply adopt varying legal definitions of "deception" that undermine a uniform standard, Courts have preserved only those claims which meet the requirements of common law fraud, which has a generally agreed upon definition. *Altria Group*, 129 S. Ct. at 545 ("fraud claims rely only on a single, uniform standard: falsity") (internal quotations omitted); *Kleffman*, No. CV 07-2406, 2007 WL 1518650, at *3 (traditional fraud prohibitions are well-established). Plaintiffs' argument,

---

[5] Plaintiffs' assertion, based on *Altria Group*, that the CAN-SPAM Act's preemption provision should be read narrowly because it addresses a subject area in which the states have traditionally exerted their police power, is patent overreaching. (Opposition at 15:19-25.) The CAN-SPAM Act does not regulate advertising, but rather electronic mail. As California did not adopt its electronic mail statute until 2003, the regulation of electronic mail can hardly be characterized as one of "the historic police powers of the States." *Altria Group*, 129 S. Ct. at 543.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

taken to its logical conclusion, would encourage divergent standards for regulating commercial email. This is precisely the result Congress sought to avoid. *See* 15 U.S.C. § 7701(a)(11); *Kleffman*, No. CV 07-2406, 2007 WL 1518650, at *3.

### b. Plaintiffs' status as Email Service Providers makes no difference to the standards for federal preemption.

Plaintiffs also try to avoid preemption by arguing that, as ESPs, they have third-party standing to enforce the spam email laws and, therefore, Congress must not have intended to preempt their claim. (Opposition at 10:20-26.) Again, plaintiffs offer no legal support – because it does not exist – for the contention that Congress would explicitly preempt state efforts to regulate spam email but then would implicitly exempt from preemption a certain class of plaintiffs (namely, ESPs). (Opposition at 8:28-9:2.) Indeed such a holding would appear directly contrary to Congress' clearly stated intent to create a single national standard for spam regulation so that legitimate businesses, like VistaPrint USA, do not have to contend with inconsistent rules in different states and so that a single state (with the most stringent requirements) does not effectively impose a national standard. *See* S. Rep. No. 108-102, at 21-22 (2003).

Plaintiffs further claim that their role as ESPs gives them Article III standing and, apparently, in plaintiffs' view, enables them to avoid preemption. But as the Court well knows, Article III standing and federal preemption are two distinct issues. While plaintiffs may (or may not) have a case or controversy sufficient to meet the Article III standing requirements, this is unhelpful in determining whether Congress intended that plaintiffs' claim be preempted.[6] Plaintiffs push their confusion further, asserting that the California legislature appointed them as "third party representatives…to prosecute violations of the statute." (Opposition at 6:20-21.) Plaintiffs thus conflate the California legislature's intent in creating its commercial email law with Congress' intent in passing the CAN-SPAM Act. While California legislators may (or may

---

[6] In fact, plaintiffs may actually lack standing under Article III. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[o]f course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.") Plaintiffs do not allege any "palpable injury" as a result of fraud or false advertising. *See Warth*, 422 U.S. at 501. Plaintiffs do not allege any injury at all. (*See* FAC, ¶¶ 11-12, 16-17.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

8.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

not) have intended to create a cause of action for ESPs without requiring a showing of fraud (*id.* at 11:4-12), the California legislature's intent is irrelevant to whether Congress explicitly preempted the type of claim alleged here. Plaintiffs' efforts to utilize the California legislature's intent to trump Congress' explicit preemption of state law turns the Supremacy Clause on its head. (*See id.* at 12:10-24.)

### c. The FAC contains no allegations of common law fraud.

As a last ditch effort, plaintiffs incorrectly claim that their allegations sound in fraud. But to support this claim, plaintiffs rely entirely on third party standing doctrines and the interests of the general public to show justifiable reliance and damages. (Opposition at 12:21-24.) The clear flaw in this argument, however, is that it relies on plaintiffs' ability to vindicate the rights of third parties that were purportedly defrauded. (*Id.* at 12:23-24.) But these allegations are notably absent from the FAC. While plaintiffs claim that the emails "would be likely to mislead a recipient" (FAC, ¶ 19), they admit that the emails were sent to "unassigned, inactive or administrative email accounts." (*Id.* at ¶¶ 16-17.) Plaintiffs' repeated declarations regarding their unique ability to protect and defend the rights of their defrauded subscribers ring hollow: no such consumers exist in the pleadings. (*Id.* at ¶¶ 16-17.) Given that no consumer is alleged to have received the emails at issue, even if plaintiffs can rely on the rights of their subscribers to allege a claim that sounds in fraud and avoid preemption (which VistaPrint USA disputes), plaintiffs fail to allege that any individual relied on the emails or was damaged by the emails, two required elements of common law fraud. *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1105 (9th Cir. 2003) (fraud requires: (1) a false representation as to a material fact; (2) with knowledge of its falsity; (3) with intent to defraud; (4) that plaintiffs justifiably relied on that representation; and (5) that plaintiffs sustained damages).[7] Reliance on third parties, therefore, does not save plaintiffs' claim from preemption.

---

[7] Even had plaintiffs actually alleged that a real customer was defrauded by the emails, it bears emphasis that plaintiffs' own allegations undercut any claim of fraud. In the materials attached to the complaint, plaintiffs demonstrate that customers are made aware of the shipping and processing charges on the first page viewed upon clicking in the email. (FAC, Ex. C at 1.) Additionally the business cards advertised by VistaPrint were in fact free; customers pay only shipping and processing, and numerous customers have taken advantage of this legitimate offer.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

**2.     Plaintiffs misstate the availability of the CAN-SPAM Act's remedy.**

Plaintiffs' final argument against federal preemption rests entirely on rhetoric and essentially asks the Court to ignore the explicit will of Congress and permit plaintiffs to proceed with their claim because "the spammers, scammers, and hackers are winning despite the best efforts of both [the California legislature and Congress]." (Opposition at 3:23-25.) To support this hyperbole, plaintiffs rely on the assertion that "Internet Service providers, based on Federal lower court rulings, no longer have standing to bring an action…" under the Federal CAN-SPAM Act and are left without a remedy if the Court finds their claim preempted. (*Id.* at 4:3-4; 3:19-27.) But this argument is plainly misleading. Consumers and Internet Service Providers who are *actually* harmed continue to have a legal remedy. As plaintiffs are well aware, the **only** parties that can bring a private right of action under the CAN-SPAM Act are "Internet Access Services" such as Asis and Foggy.[8] 15 U.S.C. § 7706(g)(1); s*ee generally, MySpace Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1299-1300 (C.D. Cal. 2007) (granting MySpace's injunction under CAN-SPAM). To bring a cause of action under the CAN-SPAM Act, the Internet Access Service must have been "adversely affected" by spam, e.g., experienced some harm related to "bandwidth, hardware, Internet connectivity, network integrity, overhead costs, fees, staffing or equipment costs…." *ASIS Internet Servs.*, No. C-05-05124, 2008 WL 1902217, at *16. Where, as here, plaintiffs have "no evidence … that any of the Emails either reached any active … users … or were the subject of complaints," the Courts have found that Internet Service Providers lack standing under the CAN-SPAM Act. *Id.* at *17; (*see also* FAC, ¶¶ 16-17.) But if there *were* an actual injury, plaintiffs could bring their claim under the CAN-SPAM Act. The federal statute, therefore, does not leave legitimate plaintiffs without a remedy.

Further, plaintiffs' contention that consumers will be left with no recourse should the Court find plaintiffs' claim preempted is similarly specious. (Opposition at 4:23-25.) Consumers who are actually misled by fraudulent advertising can bring an action under either California's

---

[8] An "Internet Access Service" under CAN-SPAM is defined as "a service that enables users to access content, information, electronic mail, or other services offered over the Internet…" 47 U.S.C. § 231(e)(4). Asis and Foggy, as providers of electronic mail, likely meet this definition.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

general false advertising law (Cal. Bus. & Prof. Code § 17500) or California's anti-spam statute (Cal. Bus. & Prof. Code § 17529.5). *See ASIS Internet Servs.*, No. C05-5124, 2008 WL 1902217, at *19 (CAN-SPAM Act "permits state law to regulate the use of electronic messages only to the extent those regulations are based on traditional principles of fraud"). If a consumer can allege a claim under California's broad false advertising law, then it would not be preempted by the CAN-SPAM Act because the state law does not regulate commercial email. And if the consumer could also allege all of the elements of common law fraud, such as reliance and damages, then the consumer could bring a claim under the California anti-spam statute because the claim would not be preempted.

With the CAN-SPAM Act and Cal. Bus. & Prof. Code section 17529.5, as amended by Proposition 64, Congress and California voters sought to avoid the type of lawsuit brought time and time again by plaintiffs' counsel: lawsuits by third parties suffering no damage simply "as a means of generating attorney's fees without creating a corresponding public benefit." Initiative Measure (Prop. 64) reprinted at Cal. Bus. & Prof. Code Ann. § 17535 (2008); *see also ASIS Internet Servs.*, No. C05-5124, 2008 WL 1902217, at *17. Because there are no injuries or damages, sustained by any person or entity, including plaintiffs, this is exactly the type of case that wastes judicial resources and should properly be dismissed. Despite plaintiffs' dramatic warnings, if they had some cognizable injury (which they do not and do not allege), they would be legally able to proceed with their action.

C. **Even if Not Preempted, the FAC Fails to State a Claim Under Federal Rule of Civil Procedure 12(b)(6).**

The FAC fails to allege essential elements required to maintain the claim and also fails to meet the pleading requirements of Federal Rule 9(b).

1. **Plaintiffs fail to allege reliance and lost money or property, essential elements of the claim after Proposition 64.**

Because plaintiffs bring a claim under California's false advertising laws, Proposition 64's requirements are clear: "[a]fter Proposition 64, only those private persons 'who [have] suffered injury in fact and [have] lost money or property' … may sue to enforce the unfair competition and

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

false advertising laws. Uninjured persons may not sue … and private persons may no longer sue on behalf of the general public (Prop. 64, § 1, subd. (f))." *Branick v. Downey Savings & Loan Ass'n*, 39 Cal. 4th 235, 240-41 (2006).[9] Federal courts have applied a consistent interpretation to Proposition 64, requiring any plaintiff bringing a cause of action under the false advertising laws to allege reliance on the false advertising as an element of the claim. *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005); *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1182 (C.D. Cal. 2007); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007).[10]

Plaintiffs explicitly admit that they do not allege reliance or lost money or property. (Opposition at 11:6-12.) Because of Proposition 64, their failure to allege these elements is fatal to their claim. *See Branick*, 39 Cal. 4th at 240-41. In spite of the clear intent of the California voters, plaintiffs maintain that the requirements of Proposition 64 do not apply because they have not brought an action for injunctive relief pursuant to Cal. Bus. & Prof. Code § 17535 and because they have brought their action under California's laws regarding "Restrictions on Unsolicited E-Mail Advertisers" rather than California's false advertising law. (Opposition at 20:19-28.) These arguments are specious.

Plaintiffs correctly point out that the new requirements of Proposition 64 were codified in section 17535, the remedy section applicable to the entire chapter, which only discusses injunctions. *See* Cal. Bus. & Prof. Code § 17535. Despite the placement of Proposition 64's requirements, California Courts have broadly applied these requirements to all claims brought under the false advertising laws. *See, e.g., Branick*, 39 Cal. 4th at 240 (Proposition 64 applies to

---

[9] In their argument regarding Proposition 64, plaintiffs repeatedly discuss the intent of the legislature. The intent of the legislature is immaterial to the discussion of Proposition 64, which was adopted by California voters in 2004 to prevent the very type of suit that plaintiffs are attempting to bring. *See* Proposition 64 § 1, subd. (f)).

[10] Plaintiffs correctly note that *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137-38 (C.D. Cal. 2005) held against the weight of authority that reliance is not an element of a false advertising claim. *See Wiener v. Dannon Co.*, No. CV-08-415, 2009 U.S. Dist. LEXIS 12883, at *23-25 (C.D. Cal. 2009) (noting that *Anunziato* represents a split in authority, but that the majority view is that a claim under the false advertising laws requires reliance). Even if reliance is not an element, plaintiffs clearly do not meet the lost money or property requirement of the claim, and therefore their claim still fails. *See Anunziato*, 402 F. Supp. 2d at 1136-37.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

claims under the "false advertising laws"); *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 817 (2007) (applying Proposition 64's requirements to false advertising claim seeking restitution and injunctive relief). While plaintiffs do not seek injunctive relief pursuant to section 17535, clear California precedent demonstrates that Proposition 64's standing requirements apply regardless. *See Buckland*, 155 Cal. App. 4th at 817.

Plaintiffs' reliance on *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) and the California Supreme Court's recent decision in *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009) are misplaced. *Freeman* predates by almost ten years the drastic changes to the law implemented by the passage of Proposition 64 in November 2004 and, therefore, its precedent regarding the elements of a cause of action for false advertising is obsolete. *Meyer* discusses standing under the CLRA, Cal. Civ. Code § 1770, and does not address the elements of false advertising under Cal. Bus. & Prof. Code § 17500 *et seq*.

Plaintiffs' only real argument that Proposition 64's requirements do not apply is that the claim is not related to California's false advertising laws. (Opposition at 20:19-21:7.) But this argument is disingenuous at best: plaintiffs spend the majority of their brief arguing that their claim is actually a claim for false advertising and assert that this permits them to avoid preemption under the CAN-SPAM Act. (*Id.* at 5:3-6:14, 17:8-20:2.) But in arguing against preemption, plaintiffs explicitly state that: "[t]here is no real difference between B & P Code § 17529.5 and California's false advertising laws." (*Id.* at 6:10-11.) Plaintiffs therefore cannot avoid the requirements of Proposition 64 by arguing that they are not bringing a false advertising claim.

The voters of California explicitly adopted Proposition 64 because "[t]his state's unfair competition laws set forth in Sections 17200 and 17500 of the Business and Professions Code … are being ***misused by some private attorneys who … [f]ile lawsuits where no client has*** been injured in fact [or] [f]ile lawsuits for clients who have not used the defendant's product or service, ***viewed defendant's advertising, or had any other business dealing with the defendant.***" Prop. 64, § 1, subd. (b) (emphasis added). The California voters concluded, "[i]t is the intent of California voters in enacting this act ***that only the California Attorney General and local public***

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

*officials be authorized to file and prosecute actions on behalf of the general public.*" *Id*. at § 1, subd. (f) (emphasis added). Because VistaPrint USA's promotions did not result in any lost money or property by any person or entity, which plaintiffs freely admit (Opposition at 11:6-12), this litigation is exactly the type that voters wanted to avoid clogging the judicial system.

### 2. The FAC should be dismissed because it fails to plead fraud with particularity.

Plaintiffs do not dispute that they must plead their claim with particularity as required by Rule 9(b). Instead, plaintiffs claim that the FAC meets the particularity requirement. (Opposition at 23:5-24:12.) To support their claim, however, plaintiffs rely on allegations of fraud "not alleged in the FAC"—and entirely outside the subject matter of the FAC—including, for example, a claim that "Defendants' [sic] then make unauthorized charges to participating consumer credit cards." (Opposition, 23:24-25.) The first three pages of the Opposition contain numerous allegations of fraud that are not alleged in the FAC and of which VistaPrint USA had no prior notice. (Opposition, 1:6-3:9.) Plaintiffs cannot rely on these allegations – appearing for the first time in Opposition – to comply with Rule 9(b). Parties are required to *plead* fraud with particularity precisely for this reason: to ensure "that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). If plaintiffs have additional allegations of fraud that they intend to utilize in their case, VistaPrint USA cannot prepare a proper response because the allegations have not been pled in the FAC with particularity and the FAC should be dismissed.

In addition to these new unrelated allegations of fraud, plaintiffs make blanket allegations regarding the sheer number of emails received by each plaintiff, but do not identify which emails were received by Asis versus those that were received by Foggy (*See* FAC, ¶ 13, Exs. A-B); they do not allege on what basis they connect VistaPrint USA with the actual senders of the emails (FAC, Ex. A); and they have provided VistaPrint USA with only a very small sampling of the actual emails alleged to have been fraudulent. Indeed, plaintiffs amended their original complaint

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA

in part to remove copies of emails they had included in support of their initial filing following their realization that such emails included shipping and processing information on the face of the email itself. This one fact—which should have been obvious to plaintiffs prior to filing of their original complaint—vastly reduced the number of emails plaintiffs now allege were unlawful. Plaintiffs' bare allegations, and their failure to include all of the fraudulent harm alleged in the FAC, demonstrate the FAC's deficient compliance with Rule 9(b). *See Moore v. Kayport Package Exp., Inc*. 885 F.2d 531, 540 (9th Cir. 1989) (noting that "mere conclusory allegations of fraud are insufficient"). Failure to comply with Rule 9(b) requires dismissal. *Id*.

### III. CONCLUSION

For the foregoing reasons, VistaPrint USA respectfully requests that the Court dismiss the FAC with prejudice.

Dated: April 7, 2009                COOLEY GODWARD KRONISH LLP

s/ *Joseph S. Leventhal*
Joseph S. Leventhal (221043)

Attorney for Defendant
VISTAPRINT USA, INCORPORATED
Email: jleventhal@cooley.com

624733/SD

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

VISTAPRINT USA'S REPLY TO PLAINTIFFS'
OPPOSITION TO VISTAPRINT USA'S MTD
08-CV-5261-SBA