**Jason K. Singleton,** State Bar #166170
jason@singletonlawgroup.com
**Richard E. Grabowski,** State Bar #236207
rgrabowski@mckinleyville.net
**SINGLETON LAW GROUP**
**611 "L" Street, Suite A**
**Eureka, CA 95501**
**(707) 441-1177**
**FAX  441-1533**

**Attorneys for Plaintiffs, ASIS INTERNET SERVICES**
**and JOEL HOUSEHOLTER, dba FOGGY.NET**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation, and JOEL HOUSEHOLTER, dba KNEELAND ENGINEERING, dba FOGGY.NET,<br><br>　　　　　　Plaintiffs,<br>vs.<br><br>VISTAPRINT USA, INCORPORATED, a Delaware corporation, and DOES ONE through FIFTY, inclusive,<br><br>　　　　　　Defendants. | Case No.  C-08-5261 SBA<br><br>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION<br><br>DATE:  April 20, 2010<br>TIME:   1:00 p.m.<br>CTRM: 1, Oakland |

## I.  NOTICE OF MOTION AND MOTION:

To Defendant, **VISTAPRINT USA, INCORPORATED**, and its attorney of record:

　　　　Please take notice that on April 20, 2010, at 1:00 PM, or as soon thereafter as counsel may be heard by the above entitled Court, located in Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, California.  Plaintiff will and hereby does move the Court for an order for Summary Judgment or in the Alternative for Summary Adjudication resolving issues and defenses the Court may deem appropriate.

　　　　This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, and upon such other matters as may be presented to the Court at the time of the hearing.

# TABLE OF CONTENTS

Pg.

I.  NOTICE OF MOTION AND MOTION:                                                    1

II. MEMORANDUM OF POINTS AND AUTHORITIES                                            3

    A.     STATEMENT OF FACTS                                          3

        1.  ASIS and Foggy are email service providers.              3
        2.  ASIS and Foggy received the email advertisements at issue while
           acting as email service providers.                      5
        3.  VistaPrint USA is the advertiser in the emails at issue. 5
        4.  All of the emails contain a subject line offering a free gift
           (business cards) and none of the emails contain the terms of that free gift. 6
        5.  VistaPrint has admitted they use third party vendors who hire affiliates
           and that they do not know who actually sent the emails and they could
           not track the activity of those affiliates.              6
        6.  The subject lines in this case were approved by VistaPrint. 8
        7.  The emails do not contain the terms and condition for receiving the
           free gifts and the gifts are not free.                  8

    B.  ARGUMENT                                                    9

        1.  Basis for Summary Judgment.                              9
        2.  Summary Adjudication of issues and defenses is within the authority
           of the Court.                                           9
        3.  The emails at issue in this matter are in direct violation of B&P Code
           §17529.5.                                               10
        4.  Defendant has been unable to provide any evidence that all but a small
           portion of the email accounts opted-in to VistaPrint's programs. 12
        5.  Defendant has been unable to provide evidence that they established
           and implemented, with due care, practices and procedures reasonably
           designed to effectively prevent unsolicited commercial e-mail
           advertisements in violation of B&P Code §17529.5.       14

    C.  CONCLUSION                                                  16

1

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 at 248 and 249 (1986) ..................................9

*ASIS Internet Services v. ActiveResponse Group*, Not Reported in F.Supp.2d, 2008 WL 2952809 at *1 (N.D.Cal. 2008) ..........................................................................................14

*ASIS Internet Services v. Optin Global, Inc.*, Not Reported in F.Supp.2d, 2008 WL 1902217 at *5 (N.D.Cal. 2008) ..................................................................................................14

*Barker v. Norman*, 651 F.2d 1107 at 1123 (5th Cir., 1981)..................................................10

*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal. App. 4th 663 at  682 [38 Cal. Rptr. 3d 36].) .............................................................................................................................11

*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 512-513 [129 Cal.Rptr.2d 486] ....................................................................................................................................11

*Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.*,  860 F.Supp. 1448, 1450 (CD CA 1993).........................................................................................................................9

*Williams v. Sinclair*,  529 F2d 1383 at (9th Cir. 1975) .........................................................9

**Statutes**

**15** *USC* §45................................................................................................................................11

**15** *USC* §45(d) .........................................................................................................................11

**16** *CFR* part 251 .....................................................................................................................11

California Business and Professions Code §17529.1....................................................10, 12

California Business and Professions Code § 17529.5........................................................ passim

*California Business and Professions Code* §17500 et seq. .................................................11

*CAN SPAM ACT of 2003* ......................................................................................................7, 8

**Rules**

*FRCP* Rule 56(a) ........................................................................................................................9

*FRCP* Rule 56(a)(c) and (d) .....................................................................................................9

*FRCP* Rule 56(c) .......................................................................................................................9

*FRCP* Rule 56(d) .......................................................................................................................9

## II.  MEMORANDUM OF POINTS AND AUTHORITIES

A.          STATEMENT OF FACTS

     **1.  ASIS and Foggy are email service providers.**

     Plaintiff, **ASIS INTERNET SERVICES (hereafter "ASIS")** is an Internet Access service, in operation since 1995, in the isolated community of Garberville, California, providing dial-up and broadband, internet and email service to much of the population of Garberville.  ASIS had just under 1,000 Internet access and email customers in 2008.  ASIS both owns and leases hardware and network bandwidth in providing its services.  It costs approximately $3,000 per month to process SPAM emails in both processing and employee costs.  ASIS receives approximately 200,000 SPAM emails per day to all of its and its customers' email accounts (both active and inactive).  ASIS received the emails at issue in this matter between January 2, 2006, through November 6, 2008, in the following manner: ASIS received the emails first on its filtering service operated by Postini; then transferred, processed and stored the emails on its email server; and then transferred the emails to its attorney where they were stored on a special SPAM storage and investigation server.

     ASIS has been in business of providing dial-up and DSL internet and email services to Humboldt County, California, since 1995, primarily in the isolated community of Garberville, California.  In 2008 ASIS had 950 customers for both internet access and 1500 email service accounts.  ASIS provides these services through: its own equipment, service agreements with Postini, Falcon Knight, AT&T and other vendors; and its team of 4 employees.

     ASIS owns various domain names used to provide internet and email services.   ASIS is incorporated and licensed to do business in Garberville, California.

      Specific emails may have a higher cost than the average cost if they contain viruses or hacker software, or if they result in customer SPAM complaints. ASIS occasionally suffers network and server slow downs based on daily receipt of SPAM emails.  ASIS' contract with its service providers allows for spikes in its network band width beyond its normal contracted bandwidth at no additional costs as the costs are built into the overall contract rate.

     ASIS does not use its administrative accounts for any purpose other than to conduct its business.  That business does not include soliciting email advertisements.   See Declaration of Nella White

1   (hereafter "Dec of NW") ¶¶ 2 – 18  and Exhibits A - F.

2        Plaintiff, **JOEL HOUSEHOLTER, dba KNEELAND ENGINEERING, dba FOGGY.NET**

3   **(hereafter "**Foggy**")** is an Internet Access service, in operation since 1998, in Humboldt County,

4   California, providing dial-up internet and email service to Humboldt County.  Foggy both owns and

5   leases hardware and network bandwidth in providing its services.  It costs approximately $1,221 per

6   month to process SPAM emails in both processing and employee costs. Foggy receives approximately

7   33,273 SPAM emails per day to all of its and its customers email accounts (both active and inactive) or

8   approximately 1,011,165 SPAM emails in an average month.

9        Foggy purchased and installed a Barracuda SPAM filtering system (server and software) in July of

10  2007.  Prior to acquiring the  Barracuda system, Foggy only used DSPAM, which it still runs as both

11  SPAM filters are required to eliminate most of the SPAM.  This upgrade in SPAM filtering was caused in

12  part by the emails at issue in this case.

13        Foggy received the emails at issue in this matter between July 12, 2007, through November 13,

14  2008, in the following manner:  Foggy received the emails first through DSPAM and then on its

15  Barracuda filtering; then transferred, processed, and stored the emails on its email server; and then

16  transferred  the  emails  to  its  attorney  where  they  were  stored  on  a  special  SPAM  storage  and

17  investigation server.

18       Foggy has been in business of providing dial-up internet and email services to Humboldt County,

19  California, since 1998.  In 2007 Foggy had 75 customers for internet access and 180 email service

20  customers.  Foggy provides these services through: its own equipment; AT&T and other vendors; and its

21  employee, Joel Householter.

22       Foggy owns various domain names used to provide internet and email services.     In addition

23  FOGGY is the Administrative Contact for and/or hosts 7 additional domains.  Specific emails may have

24  a higher cost than the average cost if they contain viruses or hacker software, or if they result in

25  customer SPAM complaints.  Foggy collects all SPAM emails sent to its servers.  Among those are

26  emails sent to active, inactive, and administrative accounts.  Foggy occasionally suffers network and

27  server slowdowns based on daily receipt of SPAM emails.

28       Joel Householter spends about an hour each day, seven days a week, working with customers

fixing problems where SPAM evades the filters.  The system administrator spends 2 hours per week working on upgrades and problems with the filters.   See Declaration of Joel Householter (Hereafter "Dec of JH" ¶¶ 2 – 16 and Exhibits A - D.

### 2.  ASIS and Foggy received the email advertisements at issue while acting as email service providers.

This action was brought after Plaintiffs received more than 30,000+ email advertisements promoting free business card advertisements for Defendant, **VISTAPRINT USA, INCORPORATED (hereafter "**VistaPrint")**, sent by various senders.  The original Complaint was filed on November 20, 2008.  See Complaint.  A First Amended Complaint ("FAC") was filed on December 15, 2008. Plaintiffs' investigators carefully reviewed the emails and presented only those emails which completely met the letter of the law as stated in **California Business and Professions Code §** 17529.5 ("**B&P Code §**17529.5").  This reduced the number of emails to 5,943 (the emails at issue in this suit) emails received by both Plaintiffs: 2,881 were sent to Plaintiff ASIS' protected computers from January 2, 2006, through November 6, 2008; and 3,062 were sent to Plaintiff FOGGY's protected computers from May 26, 2007, through November 13, 2008.  See First Amended Complaint ¶ 13, Dec of NW ¶ 19 and Exhibit G (the "ASIS emails") filed under Seal and Dec of JH ¶ 17 and Exhibit E (the "Foggy emails") filed under seal – instructions for viewing the emails are included with the CDs provided.

### 3.  VistaPrint USA is the advertiser in the emails at issue.

VistaPrint USA is wholly owned subsidiary of VistaPrint Limited, a Bermuda Company, a prior Defendant dismissed by stipulation.  VistaPrint provides marketing services to VistaPrint Limited for the North American market pursuant to a services agreement between them. VistaPrint carries out marketing activities on a day-to-day basis with respect to VistaPrint Limited's products and services. These marketing activities include the sending of commercial emails (directly or indirectly through third-parties) within the North American market, whether for customer acquisition purposes or customer retention purposes. During the period of time relevant to this lawsuit, to the extent that VistaPrint Limited advertised in the United States, the advertising was done by VistaPrint USA pursuant to the services agreement.  See Docket 52 ¶¶ 1 – 2, Stipulation for dismissal of VistaPrint Limited.

Of the 5,943 emails, 3,703 emails were received after November 20, 2007 (1,498 of the ASIS

and 2,205 of the Foggy emails).  See ASIS and Foggy emails.  This information is provided if the Court decides to consider the issue of whether the statute of limitations applies and if the SOL is one year.

All of the emails indicate they are advertisements for "VistaPrint" and contain statements such as:

> "VistaPrint provides the highest quality, full-color design and printing at the lowest prices -- guaranteed! VistaPrint is a Top 20 e-commerce retailer, serving more than 8,000,000 customers worldwide."  See ASIS and Foggy Emails.

> If you do not want to receive e-mails concerning VistaPrint products, please cut and paste the following link in your browser or click here:"

1683 of the emails contain the statement:

> "The products and services described in this e-mail are provided by VistaPrint Limited, an international retailer of custom printing. United States customers may contact us in care of our U.S. subsidiary: VistaPrint USA Incorporated, 95 Hayden Avenue, Lexington, MA 02421"

(See ASIS and Foggy emails.)

All of the URLs concerning the advertisement within the emails linked through to VistaPrint USA's web site.  The web site was located at http://www.vistaprint.com/.  www.vistaprint.com is a domain owned by VistaPrint Limited. Declaration of Josh Mohland (hereafter Dec of JM) ¶¶ 2 – 3 and 8 - 9 and Exhibit A – B landing pages and WHOIS reports.

VistaPrint has admitted that federal diversity jurisdiction, personal jurisdiction in California, and venue in California are proper.  See Answer to FAC ¶¶ 1 – 3.

**4. All of the emails contain a subject line offering a free gift (business cards) and none of the emails contain the terms of that free gift.**

All of the 5,943 emails contain a subject line offering a free gift, generally in the form of 250 free business cards.  See a complete list of all subject lines listed by Plaintiffs and with a count for each subject line appearing in the set.  See Declaration of Josh Mohland ¶¶ 4 – 5 and 10 - 11 and Exhibits C and D, also see ASIS and Foggy emails.

**5. VistaPrint has admitted they use third party vendors who hire affiliates and that they do not know who actually sent the emails and they could not track the activity of those affiliates.**

Allison L. Henriquez, marketing manager for VistaPrint who oversees the email channel at VistaPrint (Declaration of Jason K Singleton ¶ 2 and Exhibit A, Deposition of Allison L. Henriquez

1    (hereafter "Dep of ALH") P.7, L10–18), testifying for VistaPrint stated that VistaPrint has relationships

2    with their "partners" and that the "partners" then contract separately with "affiliates."  Dep of ALH P.7,

3    L19–P.8, L.7.  These partners send out emails and partners with affiliate networks use those affiliates to

4    send out email advertisements.  VistaPrint's "partners" are therefore responsible for any contractual

5    agreements with the affiliates they hire, not VistaPrint.  In fact, Ms. Henriquez admitted she could only

6    identify the sender in emails sent directly by the partners.  Dep of ALH P.10, L.3–P.11, L.6.

7           VistaPrint did not implement policies to track affiliates and sub-affiliates until May of 2009.

8    Dep of ALH P.56, L.17–P.57, L.15.

9           VistaPrint provided all of its partner contracts for the period of 2006 – 2009.  See Declaration of

10   Roberta Alliston (hereafter "Dec of RA") ¶¶ 2 – 3 Exhibit A (the VistaPrint contracts filed under seal),

11   and VistaPrint's Response to Plaintiff's RFP No. 11 attached as Exhibit B.  Plaintiff has provided a disk

12   of the contracts provided by Defendant under Seal and converted to PDFs as the original files were

13   produced as compressed zip files.  Plaintiffs reviewed all of these contracts and have provided a table

14   indicating the results of that review as Dec of RA ¶¶ 3 - 6 and Exhibits C and D (Exhibit C is filed under

15   seal as it contains the entire list of VistaPrint partners).  This review indicates that there were 138

16   separate partners.  VistaPrint produced to Plaintiffs 4357 pages of documents, including, but not limited

17   to, copies of Insertion Orders and contracts between VistaPrint and its partners.  Each insertion order or

18   contract was reviewed to see if it contained language setting forth agreement to comply with the ***CAN***

19   ***SPAM ACT of 2003*** or similar laws and whether it was signed by VistaPrint, the partner, or both.  Each

20   contract or insertion order was checked to see if it was signed during the incident period:  January 1,

21   2006, through November 13, 2008.  Some of the contracts were VistaPrint's forms and some were forms

22   generated by the partner.  The evidence indicates that there were 138 partners in contract with VistaPrint

23   between 2006 and 2008.  Only 12 of those partner agreements contain a VistaPrint insertion order

24   containing compliance language.  Another 8 partner agreements were generated by the partners and

25   contain some language that required compliance with ***CAN SPAM*** and other laws.  The other

26   agreements contain no such compliance language and VistaPrint has been unable to produce any

27   evidence that any actual contractual compliance was in force at any time during the incident period for

28   the remaining 118 partners.  Of those agreements that do contain the VistaPrint insertion orders, only

1   three were in force prior to the stat of 2008.  See Dec of RA ¶¶ 5 - 6 and Exhibits C and D – Partner

2   Agreements tables.  Defendant was asked and agreed to look for any other insertion agreements that

3   were not previously produced.  Dep of ALH P.120, L.12–P.121, L9.  No further insertion orders have

4   been produced.

5          The insertion order containing *CAN SPAM* compliance language, produced by Defendant, in

6   response to Plaintiff's RFP is dated 2009.  Dec of RA ¶ 2 Exhibit A, Defendant's bates VPU-ASIS

7   00001 – 00014 (submitted under seal).  Defendant has not produced a standard insertion order with a

8   prior date, those submitted with the partner contracts were not dated and the date of signing is generally

9   discerned from a fax stamp or reference from an attached email.  See Dec of RA ¶¶ 3 - 4 Exhibit A the

10  Insertion orders, Exhibits C (filed under Seal) and D, and Exhibit B VistaPrint USA Response to

11  Plaintiff's RFP No. 11.

12         **6.  The subject lines in this case were approved by VistaPrint.**

13         During her Deposition Allison L. Henriquez was asked to mark the entire list of subject lines,

14  appearing in the emails in this case, that were not approved by VistaPrint.  Out of 450 subject lines, Ms.

15  Henriquez testified that VistaPrint approved 287 subject lines, and did not approve 163 subject lines.

16  See  Dec of JKS ¶ 3 and Exhibit B, copy of subject line list marked by Allison L. Henriquez, also see

17  Dep of ALH P.55, L.13–P.56, L.9 where she marked the subject lines and agreed most of the subject

18  lines were approved by VistaPrint.  Those marked are minor variations of the subject lines approved by

19  VistaPrint.  The approved subject lines appear in 5,346 emails and the subject lines not approved appear

20  in 597 emails.  Dec of JM ¶ 12 and Exhibit E, list of subject lines (approved/not approved) with email

21  counts.  Ms. Henriquez explains why some of the subject lines were not approved at Dep of ALH P59,

22  L2–P61, L25.  Some of the subject lines would not be approved because they contain a "//", some

23  because they contain a "Re:", and some because they didn't contain the word "Free".

24         **7.  The emails do not contain the terms and condition for receiving the free gifts and the**
           **gifts are not free.**

25

26         None of the emails contain any terms or any indication that a fee or significant personal

27  information will be required to receive the free business cards.  See the ASIS and Foggy emails

28  (submitted under seal), also see Dec of JM ¶ 5.

The landing pages of VistaPrint after several pages of advertising indicate that to receive the free business cards the consumer must pay the shipping and handling fee and provide significant personal information.  See Dec of JM ¶ 8 and Exhibit A, wherein the first disclaimer indicating a required payment appears on page 3 of the VistaPrint Limited web pages, also see the last  4 pages of Exhibit A where credit card information and personal information is collected.

**B.        ARGUMENT**

**1.        Basis for Summary Judgment.**

Upon a showing that there is no genuine issue of material fact the court may grant summary judgment on all or any part of Plaintiffs' claim.  *FRCP* Rule 56(a).  *FRCP* Rule 56(c) states that the court shall grant summary judgment if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Material facts are determined by the substantive governing law.  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 at 248 and 249 (1986).

**2.        Summary Adjudication of issues and defenses is within the authority of the Court.**

The court has authority to rule on both defenses and issues in this action.

The court has authority based on *FRCP* Rule 56(a)(c) and (d) to rule in summary judgment on Plaintiff's claims.  This includes defenses claimed by Defendants as well as issues inherent in Plaintiff's claim.  *FRCP* Rule 56(d) states that if summary judgment is not "rendered on the entire action," the court should determine what facts are not genuinely at issue.  These facts are then considered established in the action.  *Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.*,  860 F.Supp. 1448, 1450 (CD CA 1993); also see *Williams v. Sinclair*,  529 F2d 1383 at (9th Cir. 1975) for the proposition that after denying summary judgment a court may be asked for an order that deems certain facts established.

> In cases that involve complicated fact patterns and multiple causes of action, summary judgment may be granted as to some causes of action but not as to others or as to some issues but not as to others, and as to some parties but not as to others … a careful and meticulous analysis first by the parties, but ultimately by the district court will aid significantly in preventing the waste of private and judicial resources and time.

*Barker v. Norman*, 651 F.2d 1107 at 1123 (5th Cir., 1981).

Therefore, in complicated cases, such as this matter, where the case is not fully adjudicated on the facts, the Court should determine what facts are established to reduce time at trial and prevent the waste of judicial resources.

**3.     The emails at issue in this matter are in direct violation of B&P Code §17529.5.**

**B&P Code §**17529.5 states that it is unlawful to advertise in a commercial e-mail advertisement sent from California or to a California mail address where: "The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."    **B&P Code §**17529.5(a)(3).

All of these emails were sent to California mail addresses.

> (b)     "California electronic mail address" or "California e-mail address"
>         means any of the following:
>         (1)     An e-mail address furnished by an electronic mail service
>                 provider that sends bills for furnishing and maintaining that
>                 e-mail address to a mailing address in this state.
>         (2)     An e-mail address ordinarily accessed from a computer
>                 located in this state.
>         (3)     An e-mail address furnished to a resident of this state.

**B&P Code §**17529.1 (b).

All of the email addresses that received emails at issue in this case were accessed on a regular basis by computers located in California.  They are accessed by either the email address consumers or by computers that gather and process the emails for investigation.  See Dec of NW ¶ 20 and Dec of JH ¶ 18.

All of the email addresses in this case have been provided to residents of this state.

While the Defendant may argue that some of the email accounts are not active, all of the emails were provided to California customers when they were initially created or were created for internal use by either ASIS or Foggy.

Further, 2060 of the emails were sent to active accounts, and an additional 1209 of the emails were sent from California computers.  See Dec of JM ¶¶ 6 - 7.

All of the emails contain a subject line that makes a free offer of business cards.  None of the emails contain any terms or conditions for receiving those free offers.

1       The California courts have determined that the standard for false advertisements under the

2   California False Advertising Act (*California Business and Professions Code* §17500 et seq.) is the

3   reasonable consumer standard and that all that is necessary to prevail is a showing that a reasonable

4   consumer would be deceived or mislead.  (*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.

5   App. 4th 663 at  682 [38 Cal. Rptr. 3d 36].)

6       The California Courts have further found that the Federal Trade Commission has used the

7   reasonable consumer standard in development of their rules concerning false advertising and that those

8   rules apply.  (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 512-513 [129 Cal.Rptr.2d

9   486]). 15 *USC* §45 is titled "Unfair methods of competition unlawful; prevention by Commission," and

10  enables the Federal Trade Commission to issue orders regarding unfair trade practices.  15 *USC* §45(d)

11  provides that the orders of the Commission are exclusive unless overturned by the United States Court

12  of Appeals.

13      The FTC has issued 16 *CFR* part 251, "Guide concerning use of the word 'free' and similar

14  representations."   16 *CFR* Part 251 states that the terms of the offer should be set out clearly and

15  conspicuously at the outset of the offer so that no misunderstanding can occur. All of the email subject

16  lines represent that the recipient has received a free offer.  16 *CFR* part 251 clearly states that the

17  requirements for participation for an advertisement claiming a free gift must appear within the same

18  page of the offer and must be conspicuous.  None of the emails describe any terms or conditions for

19  receipt of the free gift.  There is no indication in the emails that anything is required.

20      The emails generally contain the following or similar language:

21        Boost your business image and do it for free!

22        Order professional quality business cards for free with this special
          promotional offer from VistaPrint, the world's leading online printer.

23        http://ravensidea.com/sorys?m=1020369&l=0
          Here's what you get:

24        * 250 business cards

25        * Heavy, 100 lb. (265 gsm) card stock
          * Four-color (CMYK) printing process

26        * Fast and easy online ordering
          * A satisfaction guarantee

27        Click the link below to view our business card designs and place your order:

28        (See ASIS and Foggy emails (blank spacing removed).)

Once the recipient clicks on the active links in the email they are taken to landing pages where they are offered a variety of products.  Once they have supposedly selected the free gift they are led through a dozen separate web pages where they are required to enter personal information, including: name, address, telephone, company, email address, etc.  At the end of this series of pages and only at the end they are informed that their free gift will be shipped for $5.67.   They are then required to submit credit card information or pay a $10 minimum by check or money order.

The emails are advertisements for VistaPrint.  They were sent from a California computer to California email accounts.  The contain subject lines making free offers.  There are no terms and conditions included in any of the emails concerning what is required to receive the free offer.  The offer is not free and requires both a payment and submission of significant personal information.  Therefore, the emails are in violation of **B&P Code** §17529.5

**4.      Defendant has been unable to provide any evidence that all but a small portion of the email accounts opted-in to VistaPrint's programs.**

A potential defense to this action is that the email advertisements were actually solicited by the intended recipients through direct consent.  Defendant has been unable to provide any evidence of direct consent but has asserted that a small portion of the email accounts were in their retention list and therefore opted-in to receiving email communications.

The **B&P Code** §17529.5 (b)(1)(B)(ii) states:

(ii)  Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident.

The **B&P Code** §17529.1(o) defines unsolicited as:

(o) "Unsolicited commercial e-mail advertisement" means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria:
(1) The recipient has not provided direct consent to receive advertisements from the advertiser.
(2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (l), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.

The **B&P Code** §17529.1(d) defines direct consent as:

(d) "Direct consent" means that the recipient has expressly consented to receive e-mail advertisements from the advertiser, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative.

Defendant asserted in their supplemental response to Plaintiff's Interrogatory No. 8 that the following email accounts were included in their retention data base:

becky@asis.com
beyondmassage@asis.com
bunny@asis.com
ceb@asis.com
engineer@asis.com
fhyre@asis.com
hounddog@asis.com
humboldthunnies@asis.com
kscown@asis.com
mahensley_1@asis.com
meeka@asis.com
mopogo@asis.com
myamason@asis.com
ricks@asis.com
sbnslp@asis.com
sundown@asis.com
svanella2003@asis.com
wish@asis.com
yellowrose@asis.com
frankn@foggy.net
gm@foggy.net
janfitzs@foggy.net
playitloud@foggy.net
rosey@foggy.net
rsr35@foggy.net
swishdon@foggy.net
yourhighness@foggy.net

See Dec of RA ¶ 7 Exhibit E, Defendant's Supplemental Response to Interrogatories, No. 8.

Of the emails at issue in this suit only 199 emails were sent to any of these email accounts.  Dec of RA ¶ 8.

Defendant provided no evidence of the assertion these email accounts provided a direct consent to VistaPrint to receive email advertisements, only that they appeared in VistaPrint's retention list.  As there is a significant history of buying and selling email information on the internet, and of directory harvest of email accounts by hackers, appearance on a retention list provides no evidence of direct consent by the owner of that email account.  ASIS has suffered directory harvests and has provided

evidence of that fact in other spam cases.  See Dec of NW ¶ 21, referring to evidence of directory

harvest in the ASIS v. Option Global case; also see ***ASIS Internet Services v. Optin Global, Inc.***, Not

Reported in F.Supp.2d, 2008 WL 1902217 at *5 (N.D.Cal. 2008) (courtesy copy provided).  In addition,

both ASIS and Foggy have asserted in several cases that the email accounts to which spam emails were

sent were obtained through directory harvests of their accounts.  See ***ASIS Internet Services v.***

***ActiveResponse Group***, Not Reported in F.Supp.2d, 2008 WL 2952809 at *1 (N.D.Cal. 2008) (courtesy

copy provided).

Finally, of the five email accounts, that VistaPrint claims opted-in, and that also received emails,

four of those email accounts were not open at the time they received the emails or for several years

prior:

- mopogo@asis.com received 161 emails from 1/3/07 – 11/16/08 and was closed by ASIS on 10/20/04;

- gm@foggy.net received 5 emails from 10/25/07 – 7/31/08 and was closed years prior to that time (records are so old that actual date of closing is not available);

- rsr35@foggy.net received 2 emails between 7/31/08 – 10/20/08 and is open;

- swishdon@foggy.net received 13 emails between 12/2/07 – 11/6/08 and was closed on 12/26/06;

- yourhighness@foggy.net received 18 emails between 1/17/08 – 10/17/08 and was closed years prior to that time (records are so old that actual date of closing is not available).

See Dec of NW ¶ 22 and Dec of JH ¶ 19.

This evidence indicates that at least four of the five emails was obtained by buying them from a

vendor who acquired them through a directory harvest or other such means and directly contradicts any

assertion that there was direct consent.

Therefore, there is no evidence sufficient to prove at trial that VistaPrint received direct consent

from anyone and that the emails at issue were solicited.

**5.    Defendant has been unable to provide evidence that they established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements in violation of B&P Code §17529.5.**

If the Court finds that Defendant has implemented practices and procedures with due care to

1    effectively prevent un-solicited commercial email advertisements, then the Court can reduce the amount

2    of liquidated damages in the case.  However, Defendant has provided scant evidence that they did

3    anything to prevent the sending of email advertisements in their name and in violation of **B&P Code**

4    **§**17529.5.

5          **B&P Code §**17529.5 (b) (2) states:

6               (2) If the court finds that the defendant established and implemented, with
7               due care, practices and procedures reasonably designed to effectively
                prevent unsolicited commercial e-mail advertisements that are in violation
8               of this section, the court shall reduce the liquidated damages recoverable
                under paragraph (1) to a maximum of one hundred dollars ($100) for each
9               unsolicited commercial e-mail advertisement, or a maximum of one
                hundred thousand dollars ($100,000) per incident.
10

11          Defendant assets it has produced all of their contracts and agreements governing the relationship

12   with their partners that were hired to send email advertisements for the period of 2006 through 2009.  As

13   the incident period of this case ends in November of 2008, therefore contracts issued after that period are

14   not relevant.  Plaintiffs' investigators reviewed all of the contracts, agreements and emails produced by

15   Defendant and produced a table of the results.  See Dec of RA ¶¶ 3 – 6 and Exhibits C and D.

16          VistaPrint has claimed that they used an insertion order with ***CAN SPAM*** compliance language

17   to control their email partners in 2008.  Further they claim that they used the partners' contract or

18   insertion agreement and attached VistaPrint's compliance statement to the partners' contracts. See Dep

19   of ALH P117, L5–24.

20          The evidence indicates that there were 138 partners in contract with VistaPrint between 2006 and

21   2008.  Only 12 of those partner agreement contain a VistaPrint insertion order.  Another 8 partner

22   agreements were generated by a partner and contain some language that required compliance with ***CAN***

23   ***SPAM*** and other laws.  The other 118 agreements contain no such compliance language and VistaPrint

24   has been unable to provide any evidence that any actual contractual compliance was in force at any time

25   during the incident period for the remaining 118 partners.

26          This is the only hard evidence that VistaPrint has been able to produce that they had

27   implemented a practice or procedure designed to prevent unsolicited email advertisements.  At least 118

28   of the vendors being used by VistaPrint to send emails on their behalf had no contractual agreement in

place to limit the sending of unsolicited emails.

This does not represent proof of due care in implementing practices and procedures.

Therefore the court should not reduce the liquidated damages in this matter.

**C.  CONCLUSION**

Plaintiff respectfully requests the Court grant Plaintiffs' motion for summary judgment or in the alternative summarily adjudicate those issues in Plaintiffs' favor that the Court consider settled.

**SINGLETON LAW GROUP**

Dated:          March 9, 2010                 /s/ Richard E. Grabowski
                                              Jason K. Singleton,
                                              Richard E. Grabowski, Attorneys for Plaintiffs,
                                              **ASIS INTERNET SERVICES and JOEL**
                                              **HOUSEHOLTER, dba FOGGY.NET**