1   COOLEY GODWARD KRONISH LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   MAZDA K. ANTIA (214963) (mantia@cooley.com)
    JOSEPH S. LEVENTHAL (221043) (jleventhal@cooley.com)
3   4401 Eastgate Mall
    San Diego, CA 92121
4   Telephone:    (858) 550-6000
    Facsimile:    (858) 550-6420
5
    Attorneys for Defendant
6   VISTAPRINT USA, INCORPORATED

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                           OAKLAND DIVISION

11

12   ASIS INTERNET SERVICES, a California        Case No. 08-CV-5261-SBA
     corporation, and JOEL HOUSEHOLTER dba
13   KNEELAND ENGINEERING, dba                   **DEFENDANT VISTAPRINT USA,**
     FOGGY.NET,                                  **INCORPORATED'S MOTION FOR**
14                                               **SUMMARY JUDGMENT OR, IN THE**
                    Plaintiffs,                  **ALTERNATIVE, PARTIAL SUMMARY**
15                                               **JUDGMENT**
             v.
16                                               Date:     May 25, 2010
     VISTAPRINT USA, INCORPORATED, a             Time:     1:00 p.m.
17   Delaware corporation, and DOES ONE          Judge:    Hon. Saundra B. Armstrong
     through FIFTY, inclusive,                    Place:    Courtroom 3
18
                    Defendants.
19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

# TABLE OF CONTENTS

**Page**

I.   Introduction ........................................................................................ 2

II.  Factual Background ........................................................................... 5

     1.   Asis Emails ................................................................ 8

     2.   Foggy Emails .............................................................. 8

III. Argument ......................................................................................... 10

   A.   Plaintiffs' Claim Is Barred Because Section 17529 Was Repealed By The Passage of Proposition 64 ........................................... 10

   B.   Alternatively, Plaintiffs' Claim Is Barred Because Plaintiffs Lack Standing ....... 12

     1.   Proposition 64 applies to California's FAL, which includes Section 17529.5 ............................................. 13

     2.   Plaintiffs did not suffer injury in fact and lost money or property as a result of the alleged misleading advertising ............................. 14

   C.   Because Plaintiffs' Action is Governed By A One-Year Statute of Limitations, Plaintiffs' Claims Are Barred With Respect to Emails Sent and Received Prior to November 20, 2007 .......................... 15

   D.   Vistaprint USA Is Entitled to Partial Summary Judgment On Plaintiffs' Claims To The Extent Based On Emails That Were Not Sent To A "California electronic mail address" Nor Sent From California ................... 18

     1.   Many of the emails at issue were not sent to a "California electronic mail address." ............................................. 18

       a.   Asis and Foggy did not send bills for maintaining any inactive email account on its servers ..................... 19

       b.   The inactive email accounts were not "ordinarily accessed" as required by the statute .......................... 19

       c.   The inactive email accounts are not furnished to residents of California ......................................... 20

     2.   The Inactive Account Emails were not sent from California .................. 20

       a.   Vistaprint USA is not located in California ................. 20

       b.   There is no evidence that the emails were sent from California ................................................... 21

IV.  Conclusion ....................................................................................... 22

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

i.

1

# TABLE OF AUTHORITIES

2
**Page**

3
CASES

4
*Ashland Oil Co. v. Union Oil Co.*,

5
567 F.2d 984 (9th Cir. 1977)......................................................................................... 16

6
*Asis Internet Services v. Subscriberbase Inc.*,
No. 09-3503, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ............................................. 12, 14

7

8
*Asis Internet Servs. v. Consumerbargaingiveaways*,
No. C-08-04856, 2009 U.S. Dist. LEXIS 36523 (N.D. Cal. April 17, 2009) ...................... 17

9
*Asis Internet Servs. v. Optin Global Inc.*,
No. C-05-5124, 2008 WL 1902217 (N.D. Cal. 2008) ....................................................... 7, 17

10

11
*Balsam v. Various*,
CSM-08-827834, CSM-09-828360 (Cal. Sup. Ct., Small Claims Division, July 10,

12
2009) .................................................................................................................................. 17

13
*Buckland v. Threshold Enters.*,
155 Cal. App. 4th 798 (2007)........................................................................................... 13

14

15
*Californians for Disability Rights v. Mervyn's, LLC*,
39 Cal. 4th 223 (2006) ....................................................................................... 10, 11, 13

16
*Cattie v. Wal-Mart Stores, Inc.*,

17
504 F. Supp. 2d 939 (S.D. Cal. 2007) .............................................................................. 15

18
*Emeryville Redevelopment Agency v. Clear Channel Outdoor*,
No. 06-1279, 2006 WL 1390561 (N.D. Cal. May 22, 2006)............................................ 12

19

20
*G.H.I.I. v. MTS Inc.*,
147 Cal. App. 3d 256 (1983)............................................................................................ 16

21
*Goehring v. Chapman Univ.*,

22
121 Cal. App. 4th 353 (2004)........................................................................................... 16

23
*Hansen v. Vallejo Elec. Light & Power Co.*,
182 Cal. 492 (1920) ................................................................................................... 16, 17

24

25
*Hypertouch Inc. v. Azoogle, Inc.*,
No. C-08-4970, 2009 U.S. Dist. LEXIS 25999 (N.D. Cal. March 19, 2009) ...................... 16

26
*Kaiser Steel Corp. v. W. S. Ranch Co.*,

27
391 U.S. 593 (1968).......................................................................................................... 12

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

# TABLE OF AUTHORITIES
## (continued)

Page

*Laster v. T-Mobile USA, Inc.*,
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ............................................................... 14

*Louisiana Power and Light Co. v. Thibodaux*,
    360 U.S. 25 (1959) ............................................................................................. 12

*Murphy v. Kenneth Cole Prods., Inc.*,
    40 Cal. 4th 1094 (2007) ...................................................................................... 15

*Optinrealbig.com, LLC v. Ironport Sys. Inc.*,
    323 F. Supp. 2d 1037 (N.D. Cal. 2004) .............................................................. 21

*People v. Bustamante*,
    57 Cal. App. 4th 693 (1997) ............................................................................... 12

*People v. Florez*,
    132 Cal. App. 4th 314 (2005) ............................................................................. 10

*Philips v. Netblue*,
    No. C-05-4401, 2006 U.S. Dist. LEXIS 92573 (N.D. Cal. Dec. 16, 2006) ............ 17

*Pom Wonderful LLC v. Welch Foods, Inc.*,
    No. 09-567, 2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) .................................... 15

*Professional Engineers in California Government v. Kempton*,
    40 Cal.4th 1016 (2007) ....................................................................................... 12

*Prudential Home Mortgage Co. v. Super. Ct.*,
    66 Cal. App. 4th 1236 (1998) ......................................................................... 15, 16

*Robert L. v. Super. Ct.*,
    30 Cal. 4th 894 (2003) ................................................................................... 10, 11

*Santa Clara Cty. Local Transp. Auth. v. Guardino*,
    11 Cal. 4th 220 (1995) ....................................................................................... 12

*UMG Recordings Inc. v. Doe*,
    No. C 08-1038 SBA, 2008 WL 2949427 (N.D. Cal. July 30, 2008) ..................... 21

*United States v. Young*,
    458 F.3d 998 (9th Cir. 2006) .............................................................................. 19

*Wal-Mart Real Estate Bus. Trust v. City Council of San Marcos*,
    132 Cal. App. 4th 614 (2005) ............................................................................. 12

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

# TABLE OF AUTHORITIES
## (continued)

Page

**STATUTES**

California Business and Professions Code
    § 17200 ........................................................................................... 10, 11, 13
    § 17204 ........................................................................................................ 13
    § 17500 ........................................................................................... 10, 13, 15
    § 17529 .................................................................................................. passim
    § 17529.1 ............................................................................................... passim
    § 17529.5 ............................................................................................... passim
    § 17535 ........................................................................................................ 13

California Code of Civil Procedure
    § 338(a) ....................................................................................................... 15
    § 340 .................................................................................................... 1, 2, 15

**RULES**

Federal Rule of Civil Procedure 56 .............................................................. 1, 21

**OTHER AUTHORITIES**

Cal. Const., Article IV, § 1 ............................................................................. 12

Senate Bill No. 186 (2003-2004 Reg. Sess.) ................................... 4, 10, 11, 21

Webster's Third New Int'l Dictionary of the English Language (Unabridged),
    at 1589 (1993). ........................................................................................... 19

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

iv.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1      <u>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT</u>

2      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS MATTER:

3         PLEASE TAKE NOTICE that on May 25, 2010, at 1:00 p.m., or as soon thereafter as this

4 motion may be heard, Defendant Vistaprint USA, Incorporated ("Vistaprint USA") will move,

5 pursuant to Federal Rule of Civil Procedure 56 and the Court's direction as expressed at the

6 February 17, 2010 Case Management Conference (Dkt. No. 67) and as modified on March 10,

7 2010 (Dkt. No. 80), for summary judgment in its favor or, alternatively, for partial summary

8 judgment in its favor.

9         By agreement of the parties, Vistaprint USA asks the Court to decide three specific legal

10 issues to dispose of this lawsuit or to narrow its scope going forward.[1] Vistaprint USA moves for

11 summary judgment on the grounds that Plaintiffs' entire case relies on a statute that was repealed

12 by the passage of Proposition 64, approved by California voters in November 2004.  Because

13 (i) California Business and Professions Code Section 17529[2] *unquestionably* is inconsistent with

14 Proposition 64 and (ii) the legislation creating Section 17529 *unquestionably* was enacted during

15 the window of time that Section 7 of Proposition 64 expressly establishes, then Section 17529

16 was repealed by the California voters and Plaintiffs cannot pursue claims under the statute.  The

17 only way that Section 17529 is not inconsistent with Proposition 64 is if Proposition 64's

18 standing requirements are deemed applicable to claims under Section 17529.  If that is the case,

19 then Plaintiffs lack standing because there is no evidence that they suffered injury in fact and that

20 they lost money or property as a result of the emails at issue in this case, and Vistaprint USA

21 remains entitled to summary judgment.  Alternatively, Vistaprint USA moves for partial summary

22 judgment on the following separate and independent grounds: (1) Plaintiffs' claims under Section

23 17529, to the extent based on emails sent prior to November 20, 2007, are barred by the

24 governing one-year statute of limitations, namely, California Code of Civil Procedure Section

25 340(a); and (2) Plaintiffs are not entitled to recover with respect to emails that were neither sent to

26

---

27 [1] Vistaprint USA reserves its right to file a separate motion for summary judgment on issues that are independent of those raised herein and that require the completion of additional discovery.

28 [2] Unless otherwise indicated, all statutory references herein are to the California Business and Professions Code.

1   a California electronic mail address (as defined in Section 17529.1) nor sent from California.

2   **STATEMENT OF ISSUES TO BE DECIDED**

3   1.     Whether Section 17529 is repealed following the passage of Proposition 64.   If not,

4          whether Plaintiffs meet the standing requirements of Proposition 64.

5   2.     Whether claims under Section 17529.5 based on emails sent prior to November 20, 2007

6          are barred by the one-year statute of limitations set forth in California Code of Civil

7          Procedure Section 340(a).

8   3.     Whether certain emails allegedly violating Section 17529.5 were sent from California or

9          sent to a "California electronic mail address" as defined by Section 17529.1.

10  **MEMORANDUM OF POINTS AND AUTHORITIES**

11  **I.     INTRODUCTION**

12         Vistaprint is a leading online retailer of marketing products and services for small

13  business and consumers.[3]   Vistaprint's products and services include business cards, brochures,

14  postcards, mailing services, websites, calendars, and invitations.   Vistaprint is a global company

15  that employs more than 1,950 people, operates 20 localized websites around the world and ships

16  products to more than 120 countries.   Its shares are publicly traded on the Nasdaq Global Select

17  Market under the symbol VPRT.   For its fiscal years 2005 through 2009, Vistaprint's revenues

18  grew at an average annual rate exceeding 55%.   Owing to Vistaprint's track record for growth,

19  *Fortune* magazine named Vistaprint to its 100 Fastest Growing Companies list in August 2009.

20         Vistaprint is well-known for its offer of free business cards: permitting customers to order

21  business cards without paying for design, manufacture, or materials, and only charging customers

22  for shipping and processing the card orders.   Vistaprint promotes these free business card offers

23  through, among other things, emails.   These free business card promotional emails are the

24  gravamen of this case.   Specifically, Plaintiffs allege that Vistaprint USA sent 5,943 emails

25  promoting free business card offers that purportedly had materially misleading subject lines in

26  violation of Section 17529.5, because the subject lines allegedly did not state that the purchaser

27  _____

28  [3] Unless otherwise indicated, "Vistaprint" refers to Vistaprint N.V. and its affiliates including Vistaprint Limited.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO                                    2.        DEFENDANT VISTAPRINT USA, INCORPORATED'S
                                                       MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
                                                       08-CV-5261-SBA

would need to pay shipping and processing charges. Plaintiffs make this bold assertion despite never having even a single customer complain that the emails were misleading. Indeed, Plaintiffs admit that they did not suffer any harm as a result of these emails.

The Plaintiffs are Asis Internet Services ("Asis"), a California corporation owned and controlled by a single person (Nella White), and Joel Householter, an individual who does business as Foggy.net ("Foggy"). While both Plaintiffs purport to be electronic mail service providers, a fair conclusion is that each Plaintiff's primary business is running an email litigation factory in partnership with Plaintiffs' counsel of record, the Singleton Law Group.[4] Asis has filed at least 16 lawsuits alleging violations of commercial email statutes in the last three years while Foggy has filed at least 8 such lawsuits in the last two years. Settlements resulting from this litigation are the source of nearly all of Plaintiffs' profits.

Plaintiffs' partnership with the Singleton Law Group works in the following manner: After a customer has stopped using Plaintiffs' email services, Plaintiffs, rather than closing the accounts as is customary, keep open these inactive accounts for the sole purpose of collecting alleged illegal commercial email. Plaintiffs have an automated system that sends emails trapped by Plaintiffs' spam filters to their litigation counsel each day. The emails are then processed by the Singleton Law Group to identify potential litigation targets. This operation is so efficient that Plaintiffs do not even identify defendants to sue – counsel simply informs Plaintiffs of the next target. Plaintiffs are so removed from the process that they do not recall what lawsuits they commenced.

Here, it is undisputed that a majority of the emails at issue went to **inactive** email accounts. In other words, Plaintiffs' customers were no longer using these accounts, and Plaintiffs maintained these accounts solely to generate new lawsuits. Indeed, Asis predicates its **entire** case on emails sent to inactive email accounts. If Plaintiffs had simply closed these inactive email accounts (consistent with the customary practice followed by Internet service providers), the emails would have simply disappeared and would never have reached Plaintiffs or

---

[4] Mr. Householter does not devote his time during business hours to Foggy matters; rather, he works full time as director of engineering at a local television station in Eureka, California.

1    the Singleton Law Group.

2        Moreover, it is beyond dispute that Plaintiffs were not harmed by the emails at issue.  In

3    their opposition to Vistaprint's motion to dismiss, Plaintiffs admitted that, as email service

4    providers, they "do not open the email advertisements, they do not respond to the emails, and they

5    do not suffer the harm from deceptive advertisements contained in the emails."  Further, Plaintiffs

6    conceded during their depositions that they were not harmed as a result of the emails or by

7    Vistaprint USA.  Indeed, it is stretching reality to believe Plaintiffs could be harmed from emails

8    sent to inactive accounts that they themselves purposefully kept open solely to enable their

9    counsel to file new lawsuits.

10        Plaintiffs' claims for violations of Section 17529 *et seq.* fail as a matter of law because

11    Section 17529 was repealed when California voters passed Proposition 64 in November 2004.

12    Specifically Proposition 64 states: "In the event that between July 1, 2003, and the effective date

13    of this measure, legislation is enacted that is inconsistent with this measure, said legislation is

14    **void and repealed** irrespective of the code in which it appears."  Proposition 64, § 7 (as printed

15    in Nov. 2004 Official Voter Information Guide ("Voter Guide") at 110) (emphasis added).[5]

16    Proposition 64 anticipated what actually happened – Senate Bill 186, which created Section

17    17529 *et seq.*, was signed by the Governor on September 23, 2003 and became effective January

18    1, 2004.  Senate Bill 186 was inconsistent with Proposition 64 because Proposition 64 requires

19    that, to have standing, a private plaintiff must have "suffered injury in fact and [] lost money or

20    property as a result of a violation" of the unfair competition laws, including the False Advertising

21    Law ("FAL").  Proposition 64, §§ 1, 3 and 5 (Voter Guide at 109-110).  This clear requirement

22    cannot be squared with Section 17529.5, which permits a cause of action to be brought by an

23    email recipient or "electronic mail service provider" regardless of any harm suffered.

24        Proposition 64 mandates that inconsistent "legislation" is "void and repealed," not simply

25    the inconsistent provisions.  Proposition 64, § 7 (Voter Guide at 110).  Accordingly, Section

26    17529 was repealed in its entirety.  Because Plaintiffs allege only a single cause of action under

---

27    [5]  The November 2004 Official Voter Information Guide is attached as Exhibit 7 to the
28    Declaration of Joseph S. Leventhal In Support of Vistaprint USA, Incorporated's Motion for
     Summary Judgment or, In the Alternative, Partial Summary Judgment ("Leventhal Decl.").

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO                                    4.                    DEFENDANT VISTAPRINT USA, INCORPORATED'S
                                                                   MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
                                                                   08-CV-5261-SBA

1   Section 17529.5, judgment should be entered in favor of Vistaprint USA.  The only way that

2   Section 17529 is not inconsistent with Proposition 64 is if Proposition 64's standing requirements

3   are deemed applicable to claims under Section 17529.  If that is the case, then Plaintiffs lack

4   standing because there is no evidence that they suffered injury in fact and that they lost money or

5   property as a result of the emails at issue in this case, and Vistaprint USA remains entitled to

6   summary judgment

7       If Vistaprint USA is not entitled to summary judgment in its favor based on these

8   Proposition 64 considerations, then Vistaprint USA nevertheless is entitled to partial summary

9   judgment on two separate and independent grounds.  First, Plaintiffs assert claims based upon

10  emails that were sent and received prior to the one-year limitations period that applies to Section

11  17529.5.  Second, Plaintiffs assert claims based on emails for which there is no evidence that they

12  were sent from California or were sent to a "California electronic mail address," as Section 17529

13  requires.  At a minimum, therefore, Vistaprint USA is entitled to partial summary judgment with

14  respect to the emails at issue under each of these separate and independent grounds.

15  **II.    FACTUAL BACKGROUND**

16      Vistaprint is a leading online retailer of marketing products and services for small

17  businesses and consumers, such as business cards, brochures, postcards, mailing services,

18  websites, calendars, and invitations.  (Declaration of Jim Sokoloff In Support of Vistaprint USA,

19  Incorporated's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment

20  (hereafter "Sokoloff Decl."), ¶ 3.)  Vistaprint's products are sold to over 8,000,000 customers

21  every year.  (*Id.*)  Vistaprint is a global company that employs more than 1,950 people, operates

22  20 localized websites around the world and ships products to more than 120 countries.  (*Id.*)  Its

23  shares are publicly traded on the Nasdaq Global Select Market under the symbol VPRT.  (*Id.*)

24  For its fiscal years 2005 through 2009, Vistaprint's revenues grew at an average annual rate

25  exceeding 55%.  (*Id.*)  The company was recently named as number 16 on *Fortune* magazine's

26  100 Fastest Growing Companies.  (*Id.*, ¶ 3, Ex. 1.)  Operational support in the United States is

27  provided by Vistaprint USA, the only defendant in this action.  (*Id.*, ¶ 2.)

28      Vistaprint is well-known for its offer of free business cards: permitting customers to order

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1   business cards without paying for design, manufacture, or materials, and only charging customers

2   for shipping and processing the card orders.  (Sokoloff Decl., ¶ 4.)   One of the ways these

3   business cards are promoted is through email offers.   (Declaration of Allison Henriquez In

4   Support of Vistaprint USA, Incorporated's Motion for Summary Judgment or, in the Alternative,

5   Partial Summary Judgment (hereafter "Henriquez Decl."), ¶ 3.)   At issue in this litigation are a

6   total of 5,943 emails *not* sent by Vistaprint USA, but purportedly sent to Plaintiffs' electronic

7   mail servers, which include Vistaprint's popular free business card offer.   (First Amended

8   Complaint ("FAC"), ¶ 13; *see* Pls.' Mot. for Summ. J. (Dkt. No. 72) at 5:12-17 (emails at issue

9   submitted by Plaintiffs); Householter Decl. (Dkt. No. 76), ¶ 17, Ex. E (emails); White Decl. (Dkt.

10  No. 77), ¶ 19, Ex. G (emails).)   Vistaprint USA contracts with third parties to send emails

11  offering Vistaprint's services and products.[6]  (Henriquez Decl., ¶ 3.)  Vistaprint USA requires that

12  these third parties comply with all commercial email statutes.  The third parties often contract

13  with others – referred to as "affiliates" in the industry – to actually send the emails containing the

14  offers of products or services.   (*Id.*)   Whenever Vistaprint USA discovers that an affiliate has

15  violated Vistaprint USA's email marketing policies and practices, which include compliance with

16  Federal and state commercial email statutes, Vistaprint USA takes appropriate action to prevent

17  such affiliate from further violations of Vistaprint USA's policies and practices.  (*Id.*, ¶¶ 4-5.)

18      Asis and Foggy filed this lawsuit on November 20, 2008.  (Dkt. No. 1.)  Plaintiffs seek to

19  recover statutory damages pursuant to Section 17529.5 based on alleged violations of that statute

20  by Vistaprint USA.  (FAC, ¶ 19.)  Plaintiffs claim to provide Internet and email services, but they

21  appear to be primarily focused on being professional litigants.  For example, Foggy currently has

22  60 customers and its owner – Mr. Householter – does not devote his time during business hours to

23  Foggy matters; rather, he works full time as director of engineering at a local television station in

24  Eureka, California.  (Leventhal Decl., ¶ 4, Ex. 3 at 43:11-12; 8:15-17.)  Moreover, Plaintiffs'

25  profits from litigation activities far exceed their profits from providing Internet and email

26  services.  For example, Asis' owner, Nella White, testified that Asis' profits were approximately

---

[6] Vistaprint USA does not offer any products for sale. During the incident period, the products in the emails at issue were sold by Vistaprint Limited.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

6.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1    five times more in 2008 than in 2009 due to "settlements from spam lawsuits." (Leventhal Decl.,

2    ¶ 5, Ex. 4 at 79:12-81:12.)

3          Plaintiffs' lawsuits are based largely on emails sent to email accounts that are out-of-

4    service and therefore could not conceivably mislead anybody.  Specifically, after a customer has

5    stopped using Plaintiffs' email services, Plaintiffs, rather than closing the accounts as is

6    customary, keep open these inactive accounts for the sole purpose of collecting emails to use for

7    new lawsuits. (Leventhal Decl., ¶ 5, Ex. 4 at 77:9-21) *see Asis Internet Servs. v. Optin Global*

8    *Inc.*, No. C-05-5124, 2008 WL 1902217, at *7 (N.D. Cal. 2008).  Plaintiffs have a system that

9    automatically sends emails trapped by Plaintiffs' spam filters to the Singleton Law Group each

10   day. (Leventhal Decl., ¶ 5, Ex. 4 at 91:9-13); *see Optin Global Inc.*, 2008 WL 1902217 at *6-*7.

11   The emails are then processed by the Singleton Law Group to identify potential litigation targets.

12   (*Id.*, ¶ 5, Ex. 4 at 91:9-13.)  This operation is so efficient that Plaintiffs do not even identify email

13   that might be problematic; rather, the Singleton Law Group simply informs Plaintiffs of the next

14   target.  (*Id.*, ¶ 5, Ex. 4 at 26:13-20, 91:9-13; ¶ 4, Ex. 3 at 89:18-20.)  Plaintiffs are so removed

15   from the process that they do not recall what lawsuits they commenced. (*Id.*, ¶ 5, Ex. 4 at 24:13-

16   21, 28:17-23; ¶ 4, Ex. 3 at 17:2-19, 24:12-25:1, 27:2-8, 27:19-28:13.)  During his deposition, in

17   fact, Foggy's owner had to ask his attorney whether he was a party to various commercial email

18   lawsuits.  (*See id.*, ¶ 4, Ex. 3 at 17:2-19, 24:12-25:1, 27:2-8, 27:19-28:13.)  The system operated

19   by Plaintiffs and the Singleton Law Group is highly productive: Asis has filed at least 16 lawsuits

20   alleging violations of commercial email statutes in the last three years while Foggy has filed at

21   least 8 such lawsuits in the last two years.  (*Id.*, ¶¶ 13-14, Exs. 12-13.)  Despite the sheer number

22   of lawsuits filed by Plaintiffs, the present case is only the second time Plaintiffs were required to

23   sit for their depositions.  (*Id.*, ¶ 5, Ex. 4 at 6:11-14 and ¶ 4, Ex. 3 at 6:11-14.)

24         The vast majority of the emails alleged in this action cannot be relied upon for liability.

25   First, many of the emails were sent prior to the one-year statute of limitations.  Second, the emails

26   sent to inactive email accounts do not qualify as emails sent to a "California electronic mail

27   address" as required under Section 17529.5(a).  For example, because most of the email accounts

28   were inactive and abandoned, Asis and Foggy did not send bills to customers to maintain the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO
7.
DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

account, the email accounts were not furnished to residents of California, and actual customers did not access any of the accounts after they became inactive. (Leventhal Decl., ¶ 5, Ex. 4 at 99:7-19, 101:3-102:8; ¶ 4, Ex. 3 at 64:7-65:6, 97:22-98:23, 101:11-19, 167:3-168:13, 175:2-176:21; ¶ 3, Ex. 2 at 7:14-17.)  For all of the emails at issue in this litigation, Plaintiffs do not allege that Asis, Foggy, or even any customer relied on the emails to make a purchase from Vistaprint. (*See generally* FAC.)  In fact, Plaintiffs do not recall ever receiving a single customer complaint about the subject matter of this lawsuit. (Leventhal Decl., ¶ 5, Ex. 4 at 134:2-23; ¶ 4, Ex. 3 at 124:10-16.)  Rather, active email account holders of both Asis and Foggy are customers of Vistaprint. (Henriquez Decl., ¶ 6.)

### 1.  Asis Emails

Asis claims that a total of 2,881 emails were sent to its servers (the "Asis Emails"). (FAC, ¶ 13; White Decl. (Dkt. No. 77), ¶ 19, Ex. G (emails).)  But all of the emails sent to Asis were sent to email addresses that were inactive and had been abandoned by the email account holder (the "Asis Inactive Account Emails"). (Leventhal Decl., ¶ 5, Ex. 4 at 109:12-113:7 (Asis collects emails for lawsuits only from inactive accounts).)  As Nella White (Asis' owner) testified, if the inactive email accounts were actually closed, as a normal email provider would do, the email data would have simply "disappear[ed]" and would not have reached Plaintiffs. (*Id.*, ¶ 5, Ex. 4 at 102:9-18.)  Further, it is undisputed that a total of 1,361 of the Asis Emails (the "Asis SOL-Barred Emails") were purportedly sent prior to November 20, 2007, more than one year before Plaintiffs filed suit. (*Id.*, ¶ 15; *see* Pls.' Mot. for Summ. J. (Dkt. No. 72) at 5:28-6:1.)  In addition, 22 of the Asis Emails indicate that they were sent in the year 2037, which is obviously impossible.[7] (Leventhal Decl., ¶ 15.)

### 2.  Foggy Emails

Foggy claims that a total of 3,062 emails were sent to its servers (the "Foggy Emails").

---

[7] Vistaprint USA believes that all of the emails submitted by Plaintiffs in this case are not reliable evidence, which will be explained more fully in Vistaprint USA's opposition to Plaintiffs' pending motion for summary judgment (Dkt. No. 72).  The fact that some of the emails indicate they were sent in the year 2037 casts doubt on the validity of the dates represented in the remainder of the emails.  Solely for purposes of this motion, however, Vistaprint USA will assume that the dates reflected on the emails are accurate (with the obvious exception of those dated 2037).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

8.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

(FAC, ¶ 13; Householter Decl. (Dkt. No. 76), ¶ 17, Ex. E (emails).)   A majority of the unique Foggy email accounts were inactive for all or part of the time that Foggy claims it received the Foggy Emails.  (Leventhal Decl., ¶ 6, Ex. 5; *see also id.* at ¶ 2, Ex. 1 at 7:11-14.)   Of the 3,062 emails that Foggy claims were sent, 1,008 were sent to email accounts that were inactive at the time of sending (the "Foggy Inactive Account Emails").  (*Id.*, ¶ 7, Ex. 6.)  It is undisputed that a total of 847 of the Foggy Emails (the "Foggy SOL-Barred Emails") were purportedly sent prior to November 20, 2007.  (*Id.*, ¶ 16; *see* Plaintiffs' Motion for Summary Judgment (Dkt. No. 72) at 5:28-6:1.)  In addition, 10 of the Foggy Emails indicate that they were sent in the year 2037.  (Leventhal Decl., ¶ 16.)

The following charts summarize the emails at issue in this motion.

Chart 1

| PLAINTIFF | TOTAL EMAILS ALLEGED | INACTIVE ACCOUNT EMAILS | REMAINING ACTIVE ACCOUNT EMAILS |
|---|---|---|---|
| FOGGY | 3,062 | 1,008 | 2,054 |
| ASIS | 2,881 | 2,881 | 0 |
| **TOTAL:** | **5,943** | **3,889** | **2,054** |

As Chart 1 demonstrates, all of the emails Asis received and nearly one-third of the emails Foggy received were sent to inactive accounts.  As discussed *infra*, the remaining active account emails are the only emails that can be considered in this litigation, provided they were also sent no more than one year prior to the filing of the complaint, as required by the statute of limitations.

Chart 2

| PLAINTIFF | TOTAL EMAILS ALLEGED | SOL-BARRED EMAILS (pre-11/20/07) | EMAILS DATED YEAR 2037 | REMAINING EMAILS DATED 11/20/07-11/20/08 |
|---|---|---|---|---|
| FOGGY | 3,062 | 847 | 10 | 2,205 |
| ASIS | 2,881 | 1,361 | 22 | 1,498 |
| **TOTAL:** | **5,943** | **2,208** | **32** | **3,703** |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1    Chart 2 shows that over 2,200 of the emails alleged in the FAC are barred by the statute of

2    limitations.  In total, 4,403 emails at issue in this case were sent to inactive accounts or are barred

3    by the statute of limitations.  Only the remaining 1,564 emails can, as a matter of law, be included

4    in the FAC.

5    **III.    ARGUMENT**

6          **A.    Plaintiffs' Claim Is Barred Because Section 17529 Was Repealed By The**
7                  **Passage of Proposition 64.**

8          In November 2004, California voters passed Proposition 64.  The measure applied to both

9    Business and Professions Code Sections 17200 *et seq.* and 17500 *et seq.* and provided standing to

10   only those individuals who suffered injury in fact and lost money or property.  *See* Proposition 64

11   §§ 1, 3 and 5 (Voter Guide at 109-110); *see also Californians for Disability Rights v. Mervyn's,*

12   *LLC,* 39 Cal. 4th 223, 228-29 & n.2 (2006).  Moreover, Proposition 64 effectively foreclosed any

13   attempt for other legislation to limit its breadth by declaring that:

14                  In the event that between July 1, 2003, and the effective date of this
15                  measure, legislation is enacted that is inconsistent with this
                    measure, said legislation is **void and repealed** irrespective of the
16                  code in which it appears.

17   Proposition 64, § 7 (Voter Guide at 110) (emphasis added).  Section 17529, which was enacted on

18   September 23, 2003, is inconsistent with Proposition 64 as it provides a private right of action to

19   an email service provider regardless of injury in fact.[8]  Under the plain and precise language of

20   Section 7 of Proposition 64, Section 17529 was repealed once California voters approved the

21   initiative in November 2004.

22         In interpreting a voter initiative, the California courts "apply the same principles that

23   govern statutory construction."  *People v. Florez*, 132 Cal. App. 4th 314, 321 (2005).  "Thus, [the

24   Court] turn[s] first to the language of the [initiative], giving the words their ordinary meaning.

25   The statutory language must also be construed in the context of the statute as a whole and the

26   overall statutory scheme [in light of the electorate's intent]."  *Robert L. v. Super. Ct.*, 30 Cal. 4th

27   _____

28   [8] Section 17529 *et seq.* was created by Senate Bill 186, which was enacted on September 23, 2003.  (Leventhal Decl., ¶ 9, Ex. 8.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1    894, 901 (2003). In other words, the Court's "task is simply to interpret and apply the initiative's

2    language so as to effectuate the electorate's intent." *Id.*

3        Section 17529 is inconsistent with Proposition 64. Section 17529 permits a cause of

4    action to be brought by an "electronic mail service provider" regardless of any harm suffered. In

5    contrast, Proposition 64 requires a plaintiff that brings a false advertising claim to have "suffered

6    injury in fact" and "lost money or property as a result of" the false advertising. Proposition 64,

7    §§ 1, 3, and 5 (Voter Guide at 109-110); *see also Mervyn's,* 39 Cal. 4th at 228-29 & n.2. In

8    passing Proposition 64, the voters stated clearly: "It is the intent of the California voters in

9    enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where

10   they have no client who has been injured in fact...." Proposition 64 § 1(e) (Voter Guide at 109)

11   (emphasis added). The official ballot pamphlet for Proposition 64 states that: "a Yes vote on

12   [Proposition 64] means: Except for the Attorney General and local public prosecutors, no person

13   could bring a lawsuit for unfair competition[9] unless the person has suffered injury and lost money

14   or property." *Id.,* at 6 (emphasis added). Thus, the standing requirements of Section 17529 are

15   wholly inconsistent with the clear and express intent of Proposition 64 and, as a consequence,

16   Section 17529 has been repealed.[10]

17       Section 17529 was enacted in September 2003 – *i.e.,* between July 1, 2003 and when

18   Proposition 64 passed in November 2004 – and became effective January 1, 2004. The drafters

19   of Proposition 64 explicitly anticipated the passage of such inconsistent legislation, like Section

20   17529, pending voter approval. Proposition 64, § 7 (Voter Guide at 110). Indeed, the inclusion

21   of the unique language of Section 7 in Proposition 64 indicates the clear intent to repeal statutes

22   that were enacted prior to its passage. Courts can properly determine that a statute is repealed

23   when "the later provision gives undebatable evidence of an intent to supersede the earlier . . . ."

24   _____

25   [9] "Unfair competition" is statutorily defined to include "any unlawful, unfair, or fraudulent
     business act or practice and unfair, deceptive, untrue or misleading advertising ***and any act***
26   ***prohibited by Chapter 1 (commencing with Section 17500*** of Part 3 of Division 7 of the
     Business and Professions Code." *See* CAL. BUS. & PROF. CODE § 17200 (emphasis added).
27   [10] Senate Bill 186 was also inconsistent with Proposition 64 because it allowed a plaintiff to
     recover damages. CAL. BUS. & PROF. CODE § 17529.5(b)(1)(B)(ii). Sections 4 and 6 of
28   Proposition 64 make it clear that no private party is entitled to damages under the Unfair
     Competition Law ("UCL") or FAL. Proposition 64 (Voter Guide at 109-110).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1    *Asis Internet Services v. Subscriberbase Inc.*, No. 09-3503, 2010 WL 1267763 at *8 (N.D. Cal.

2    Apr. 1, 2010) (quoting *People v. Bustamante*, 57 Cal. App. 4th 693, 699 (1997)).[11]   While the

3    legislature was free to pass bills that created new violations of the FAL, the provision of Section

4    17529 that deals with standing is inconsistent with Proposition 64 in express contradiction of the

5    voter initiative.   Proposition 64 mandates that the "legislation" is "void and repealed."

6    Proposition 64, § 7 (Voter Guide at 110).

7         Because the power of voter initiative in California is Constitutional, "it is generally

8    coextensive with the power of the Legislature to enact statutes." *Santa Clara Cty. Local Transp.*

9    *Auth. v. Guardino*, 11 Cal. 4th 220, 253 (1995).   When it comes to the lawmaking powers of the

10   California voters as exercised through voter initiatives, California courts have consistently noted

11   that "it is [the Court's] duty to 'jealously guard' these powers" and to effectuate the explicit intent

12   of the voters. *Wal-Mart Real Estate Bus. Trust v. City Council of San Marcos*, 132 Cal. App. 4th

13   614, 623 (2005).   There can be no doubt that California's initiative process entitles voters to

14   repeal statutes as well as enact new ones.   *See, e.g., Professional Engineers in California*

15   *Government v. Kempton*, 40 Cal.4th 1016, 1038-1039 (2007) ("because the power to legislate is

16   shared by the Legislature and the electorate through the initiative process (Cal. Const., art. IV, §

17   1)," voters have the ability to repeal statutes).   Since Plaintiffs' entire action is predicated on a

18   repealed statute, judgment should be entered in favor of Vistaprint USA.[12]

19        **B.    Alternatively, Plaintiffs' Claim Is Barred Because Plaintiffs Lack Standing.**

20        The only way that Section 17529 can survive the passage of Proposition 64 is if the

21   standing requirements of the voter initiative apply to it.   As noted above, Proposition 64 added the

22

23   [11]  Recently, Judge Conti of the Northern District of California noted the "tension" between
     Proposition 64 and Section 17529. *Subscriberbase*, No. 09-3503, 2010 WL 1267763 at *8.  But
24   the issue of whether Section 17529 was repealed by Section 7 of Proposition 64 was not raised
     with Judge Conti.
25   [12]  Alternatively, this Court should abstain from exercising jurisdiction pending resolution of this
     issue in the California state courts. *Louisiana Power and Light Co. v. Thibodaux*, 360 U.S. 25, 28
26   (1959) (Federal courts should abstain in diversity cases if there is uncertain state law and an
     important state interest that involves the government's "sovereign prerogative"); *Kaiser Steel*
27   *Corp. v. W. S. Ranch Co.*, 391 U.S. 593, 594 (1968) (Federal court should have abstained when
     issue is a "truly novel one" affecting state law); *see also Emeryville Redevelopment Agency v.*
28   *Clear Channel Outdoor*, No. 06-1279, 2006 WL 1390561 at *4-*5 (N.D. Cal. May 22, 2006)
     (remanding case based on abstention).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO
                              12.
                                          DEFENDANT VISTAPRINT USA, INCORPORATED'S
                                          MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
                                          08-CV-5261-SBA

1    requirement that a plaintiff have "suffered injury in fact and ... lost money or property as a result

2    of" the false advertising alleged. Sections 17204, 17535; *see also Mervyn's*, 39 Cal. 4th at 229

3    n.2 (2006). Since Plaintiffs concede that they do not, and cannot, establish lost money or

4    property as a result of the allegedly misleading subject lines, summary judgment should be

5    granted.

> **1.    Proposition 64 applies to California's FAL, which includes Section 17529.5.**

8         Proposition 64 clearly addressed claims brought under Business and Professions Code

9    Sections 17200 *et seq.* and 17500 *et seq.* *See* Proposition 64, § 1(a) (Voter Guide at 109). The

10   proposition explicitly revises the standing provisions that apply to both the UCL and FAL. *See*

11   *id.* at §§ 3 and 5. The applicability of Proposition 64 to 17500 *et seq.* has also been clearly

12   recognized by the California courts. *See Mervyn's*, 39 Cal. 4th at 229 n.2 ("Proposition 64 also

13   makes identical changes to the false advertising law (§ 17500 *et seq.*) concerning standing to sue"

14   and the requirement that plaintiff lost money or property as a result of the false advertising.);

15   *Buckland v. Threshold Enters.*, 155 Cal. App. 4th 798, 819 (2007) ("In approving Proposition 64,

16   the voters made identical findings regarding the UCL and FAL, and amended Business and

17   Professions Code Section 17535 to impose the standing requirements and limits placed upon

18   UCL actors.").

19        Section 17529 is a subsection of Section 17500 *et seq.* and is located, along with

20   numerous other provisions specific to false advertising, in Chapter 1, Part 3 of Division 7 of the

21   California Business and Professions Code, part of California's FAL.[13] It is clear from the

22   language of Proposition 64 that the voters intended the standing requirements of Proposition 64 to

23   apply broadly to the UCL and the FAL, which includes Section 17529.5. As discussed *supra*, if

24   these standing requirements are not found to apply to Section 17529.5, then Section 17529 is

25   inconsistent with Proposition 64 and is void and repealed.

---

[13] It is undisputed that the instant claim is brought under the FAL. Indeed, Plaintiffs have consistently asserted throughout this action that Section 17529.5 is part of the larger California FAL. (FAC, ¶ 19; Pls.' Opp'n to Vistaprint's Mot. To Dismiss ("MTD Opposition") (Dkt. 21) at 5:3-6; 6:10; 14:17-15:1.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

2. **Plaintiffs did not suffer injury in fact and lost money or property as a result of the alleged misleading advertising.**

Plaintiffs concede that they have not, and cannot, establish injury in fact and lost money or property as a result of the allegedly misleading emails. With this concession, Plaintiffs' claim fails under the plain language of Proposition 64 and summary judgment is proper.

Plaintiffs' claim is exclusively based on their contention that the emails at issue containing Vistaprint's well-known free business card offer are misleading because customers must pay for shipping and processing. (FAC ¶ 19.) But Plaintiffs have conceded that, as email service providers, they "do not open the email advertisements, they do not respond to the emails, and they do not suffer the harm from deceptive advertisements contained in the emails." (MTD Opposition (Dkt. No. 21.) at 11:6-12.) At best, the only harm claimed by Plaintiffs relates to the receipt of commercial email messages more generally, with no nexus to the allegedly misleading advertising. (Leventhal Decl., ¶ 3, Ex. 2 at 5:13-6:2; *id.*, ¶ 2, Ex. 1 at 5:11-26.) When questioned about the supposed "greater harm" that the emails at issue in this case caused them, Plaintiffs conceded that there was no greater harm. (*See id.*, ¶ 4, Ex. 3 at 159:20-161:8; and ¶ 5, Ex. 4 at 156:8-157:8.) For example, Foggy has no employees and does not pay any wages or salary that can be attributed to commercial emails. (*Id.*, ¶ 4, Ex. 3 at 35:18-19.) Contrary to Mr. Householter's sworn declaration, Foggy has not had to upgrade its spam filtering as a result of the emails in this case. (*Id.*, ¶ 4, Ex. 3 at 158:1-14, and Ex. 7 thereto.) Plaintiffs actually enjoy dramatically higher profits because of the commercial email they receive than they otherwise would without the email. As previously noted, Asis' profits were approximately five times higher in 2008 than in 2009 directly due to settlements related to unsolicited commercial email. (*See id.*, ¶ 5, Ex. 4 at 79:12-81:12.)

Courts have consistently held that, when plaintiffs cannot show that they have lost money or property as a result of allegedly misleading advertising, they lack standing under the FAL.[14] *See e.g., Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing

---

[14] We anticipate that Plaintiffs will rely on Judge Conti's recent opinion in *Subscriberbase*, No. 09-3503, 2010 WL 1267763, at *7, which found that the standing requirements of Proposition 64 did not apply to Section 17529. However, that ruling is of no import here, as neither the parties nor the Court addressed the impact of Section 7 of Proposition 64.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1   claim and stating: "Because Plaintiffs fail to allege they actually relied on false or misleading

2   advertisements, they fail to adequately allege causation as required by Proposition 64."); *Cattie v.*

3   *Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 947-49 (S.D. Cal. 2007) (dismissing FAL claim for

4   failure to comply with Proposition 64 where plaintiff failed to allege that she "actually relied on

5   false or misleading advertisements.") (citations omitted); *Pom Wonderful LLC v. Welch Foods,*

6   *Inc.*, No. 09-567, 2009 WL 5184422, (C.D. Cal. Dec. 21, 2009) (granting judgment on pleadings

7   against plaintiff who alleged Section 17500 claim because it did not suffer "a loss that would

8   entitle it to restitution").

9       Because Proposition 64 must apply to Section 17529.5 or it is repealed, and Plaintiffs

10   have not, and cannot, make a showing of injury in fact and lost money or property as a result of

11   the allegedly misleading advertising, Vistaprint USA is entitled to summary judgment in its favor.

12   **C.    Because Plaintiffs' Action is Governed By A One-Year Statute of Limitations,**
         **Plaintiffs' Claims Are Barred With Respect to Emails Sent and Received**
13        **Prior to November 20, 2007.**

14      Plaintiffs seek to recover statutory damages under Section 17529.5(b)(1)(B) for emails

15   sent between January 2, 2006 and November 13, 2008, including 2,208 emails that were sent

16   before November 20, 2007, more than one year prior to the date Plaintiffs filed their action.  But

17   as Plaintiffs are aware and even argued in prior litigation, Section 17529.5 creates a statutory

18   penalty.  Because statutes creating penalties are governed by a one-year statute of limitations (*see*

19   CAL. CODE CIV. PROC. § 340(a)), the Court should grant partial summary judgment as to any

20   emails sent more than one year before Plaintiffs filed this action.

21      Under California law, an action based on a statute is ordinarily subject to a three-year

22   statute of limitations.  *See* CAL. CODE CIV. PROC. § 338(a).  A key exception, however, is when

23   the statute creates a penalty or a forfeiture, in which case a one-year statute of limitations applies.

24   CAL. CODE CIV. PROC. § 340(a).  "[T]he settled rule in California is that statutes which provide

25   for recovery of damages additional to actual losses incurred … are considered penal in nature,

26   and thus governed by the one-year period of limitations stated in Section 340 [of the California

27   Code of Civil Procedure]."  *Prudential Home Mortgage Co. v. Super. Ct.*, 66 Cal. App. 4th 1236,

28   1242-43 (1998) (cited approvingly by *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094,

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1104 (2007)). Statutes that provide for recovery "without any reference to the question of actual damage" are also considered penal in nature. *Prudential Home Mortgage*, 66 Cal. App. 4th at 1245 (citing *Hansen v. Vallejo Elec. Light & Power Co.*, 182 Cal. 492, 496 (1920)).

In determining the applicable statute of limitations, California courts look to the nature of the relief authorized by the statute, rather than the label given to that relief by the legislature. In *Hansen*, for example, the California Supreme Court held that a one-year statute of limitations applied to a statute that created a penalty since it permitted recovery of "liquidated damages" without reference to the actual damages experienced by the plaintiff. *See Hansen*, 182 Cal. at 495-96 (use of the term "liquidated damages" "cannot fairly be construed as meaning or intended to mean anything other than a penalty or a forfeiture."); *see also Ashland Oil Co. v. Union Oil Co.*, 567 F.2d 984, 990-92 (9th Cir. 1977) (one-year statute of limitations applies to actions for damages without reference to actual loss under California law); *G.H.I.I. v. MTS Inc.*, 147 Cal. App. 3d 256, 277-78 (1983) (one-year statute of limitations applied to claim for treble damages under statute); *Goehring v. Chapman Univ.*, 121 Cal. App. 4th 353, 387 (2004) ("[The] California Supreme Court has characterized as a penalty any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him [or her] for a legal damage done him [or her] by the former.") (internal quotations omitted).

Section 17529.5 permits recovery of $1,000 per email in "liquidated damages" in addition to actual damages, and without reference to the actual harm – if any – incurred by the plaintiff. *See* Section 17529.5(b)(1)(B). There is no logical connection between the $1,000 ***per email*** permitted by Section 17529.5 and any actual harm experienced by the recipient or email service provider bringing the action. Not surprisingly, therefore, the legislative history to Section 17529 consistently refers to Section 17529.5 as a "penalty" provision. *See* Assem. Com. on Business and Professions, Analysis of Sen. Bill No. 186 (2003-2004 Reg. Sess.) July 1, 2003 (attached to Leventhal Decl. as Ex. 10). Under the long line of authority detailed in *Prudential Home Mortgage*, Section 17529.5 clearly creates a statutory penalty under California law and should be subject to a one-year statute of limitations. Indeed, Federal courts have consistently held that actions under Section 17529.5 are subject to a one-year statute of limitations. *Hypertouch Inc. v.*

Cooley Godward
Kronish LLP
Attorneys At Law
San Diego

16.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1   *Azoogle, Inc.*, No. C-08-4970, 2009 U.S. Dist. LEXIS 25999, at *4-*7 (N.D. Cal. March 19,

2   2009) (action under Section 17529.5 for liquidated damages subject to one-year statute of

3   limitations); *Philips v. Netblue*, No. C-05-4401, 2006 U.S. Dist. LEXIS 92573, at *15-18 (N.D.

4   Cal. Dec. 16, 2006) (same).[15]

5        Plaintiffs cannot convincingly suggest that a three-year statute of limitations should apply.

6   In fact, Plaintiffs have previously conceded that Section 17529 is subject to a one-year statute of

7   limitations. *Asis Internet Servs. v. Consumerbargaingiveaways*, No. C-08-04856, 2009 U.S. Dist.

8   LEXIS 36523, at *23 (N.D. Cal. April 17, 2009).  Asis has also affirmatively argued that Section

9   17529.5 creates a statutory penalty.  *See Asis v. Optin Global*, Asis' Motion for Summary

10  Adjudication of Issues, 05-cv-5124 (Dkt. No. 318) at 18:6-13 (N.D. Cal. 2008) (motion partially

11  predicated on argument that liquidated damages provision under Section 17529.5 is statutory

12  penalty making defendant's mitigation of damages defense inapplicable) (attached to Leventhal

13  Decl. as Ex. 11).  Given these prior positions, Plaintiffs cannot credibly argue that anything other

14  than a one-year statute of limitations applies.[16]

15       Vistaprint USA accordingly is entitled to summary judgment in its favor to the extent that

16  Plaintiffs' claims are based on emails sent prior to November 20, 2007, including the 1,361 Asis

17  SOL-Barred Emails and the 847 Foggy SOL-Barred Emails, as well as the 22 Asis emails and the

18  10 Foggy emails dated year 2037.

19

20  [15] The facts of this case dramatically illustrate the penal nature of Section 17529.5's liquidated
    damages provision.  Asis maintains that its total harm experienced per month as a result of *all* of
21  the approximately 200,000 "spam" emails it receives *per day* (and not limited to the emails
    received in the present action) equals $3,000 per month.  (White Decl. (Dkt. No. 77), ¶¶ 8-9.)
22  Foggy similarly claims that its total harm experienced per month as a result of *all* of the
    approximately 33,000 "spam" emails it receives *per day* equals $1,221 per month.  (Householter
23  Decl. (Dkt. No. 76), ¶¶ 7-8.)  Even if these conclusory claims are assumed to be true, the
    maximum actual harm as a result of *all* "spam" email, and not just those at issue in the present
24  litigation, sent to Plaintiffs' servers over the 35-month period of time in the complaint is
    $147,735.  This amount is a far cry from the $5,943,000 Plaintiffs seek to recover in the instant
25  action. (FAC, ¶ 1.)
    [16] In arguing for a three-year statute of limitations, Plaintiffs might cite an unpublished California
26  Small Claims Court opinion from the County of San Francisco, *Balsam v. Various*, CSM-08-
    827834, CSM-09-828360 (Cal. Sup. Ct., Small Claims Division, July 10, 2009), which held that
27  Section 17529.5 is not subject to a one-year statute of limitations.  But *Balsam* was wrongly
    decided and should not be followed because it failed to acknowledge *Hansen* and the statute's
28  legislative history, and it misconstrued the nature of the liquidated damages provision.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1  **D.   Vistaprint USA Is Entitled to Partial Summary Judgment On Plaintiffs'
       Claims To The Extent Based On Emails That Were Not Sent To A
2      "California electronic mail address" Nor Sent From California.**

3  Plaintiffs' claims for liability on emails sent to inactive email accounts fail as a matter of

4  law because Plaintiffs cannot establish they meet Section 17529's requirement that the emails

5  received by inactive email accounts were "either sent from California or sent to a California

6  electronic mail address...."  Section 17529.5(a).  This nexus with California, as defined by the

7  statute, is an essential element of Plaintiffs' claim.  *See id.*; *see also* Assem. Com. on Business

8  and Professions, Analysis of Sen. Bill No. 186 (2003-2004 Reg. Sess.) July 1, 2003 (attached to

9  Leventhal Decl. as Ex. 10).

10  **1.   Many of the emails at issue were not sent to a "California electronic
11       mail address."**

12  Plaintiffs cannot establish that any of the emails sent to inactive email accounts were sent

13  to California electronic mail addresses.  A "California electronic mail address" is defined by the

14  statute as meeting one of three prongs: "(1) An e-mail address furnished by an electronic mail

15  service provider that sends bills for furnishing and maintaining that e-mail address to a mailing

16  address in this state[;] (2) An e-mail address ordinarily accessed from a computer located in this

17  state [; or] (3) An e-mail address furnished to a resident of this state."  Section 17529.1.

18  None of the emails allegedly sent to inactive email accounts meet any of the three

19  requirements under Section 17529.1.  As previously detailed, Asis predicates its entire case on

20  emails sent to inactive email accounts, *i.e.* accounts that do not belong to actual customers and

21  were not active or being used by a consumer at the time the allegedly wrongful email was

22  received.  (Leventhal Decl., ¶ 5, Ex. 4 at 109:12-113:7.)  Foggy similarly predicates its case on

23  1,008 emails sent to inactive accounts.  (*Id.*, ¶ 7, Ex. 6.)  Contrary to providing a nexus with

24  California, as is the legislative intent, these inactive email accounts appear to be nothing more

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

than receptacles to facilitate Plaintiffs' near constant litigation under Section 17529.5.[17]

### a.   Asis and Foggy did not send bills for maintaining any inactive email account on its servers.

Asis and Foggy did not send bills to their customers for maintaining any of the inactive email accounts that their previous customers had discarded and abandoned. (Leventhal Decl., ¶ 3, Ex. 2 at 7:14-17; ¶ 4, Ex. 3 at 175:2-176:21.) The inactive Asis and Foggy accounts did not belong to any active Asis or Foggy user. (Leventhal Decl., ¶ 3, Ex. 2 at 7:14-20; *id.*, ¶ 2, Ex. 1 at 7:11-14.) Thus, Asis and Foggy did not send bills for the e-mail accounts *to a mailing address in California*. Plaintiffs concede, therefore, that none of the Asis Inactive Account Emails and Foggy Inactive Account Emails were sent to "[a]n email address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in [California]." *See* Section 17529.1.

### b.   The inactive email accounts were not "ordinarily accessed" as required by the statute.

The inactive email accounts are not "ordinarily accessed" from a computer located in California. Although the term "ordinarily" is not defined by the statute (*see* Section 17529.1), it must be given its common sense meaning. *See, e.g., United States v. Young*, 458 F.3d 998, 1007 (9th Cir. 2006) ("terms not defined [by the statute] should be given their common, everyday meaning"). The dictionary defines the term "ordinarily" as "in the ordinary course of events: usually." Webster's Third New Int'l Dictionary of the English Language (Unabridged), at 1589 (1993). For the term "ordinarily accessed" to have any meaning, it must refer to access by the person who uses the email address to send and receive email. Even the broadest definition of "ordinarily accessed" cannot encompass the review of emails by litigation counsel to prepare for potential lawsuits. If it did, it would render meaningless the requirement that emails that

---

[17] Asis admits as such in its interrogatory responses, stating that email sent to inactive accounts first is filtered by Postini, which would normally prevent such email from getting through, and then the email is actually returned to Asis and "aliased," *i.e.* sent, to a single email address and collected in a database for Asis' attorneys' review. (Leventhal Decl., Ex. 2 at 10:21-11:1.) This process is automated and completed daily for both Asis and Foggy. (Leventhal Decl., ¶ 5, Ex. 4 at 99:7-100:24; Ex. 3 at 64:7-65:19.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

19.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1   allegedly violate Section 17529 must be sent to a California electronic mail address or sent from

2   California.

3         Here, Plaintiffs have conceded that neither they nor their previous customers ever

4   accessed any of the emails sent to inactive email accounts.  The only review of the actual emails

5   was done by the Singleton Law Group in its efforts to identify litigation targets and file lawsuits.

6   Because the accounts were therefore not "ordinarily" accessed by a user of that account, these

7   "inactive" accounts could not possibly be "ordinarily" accessed in California.  *See* § 17529.1.

8   This prong, then, cannot be the basis to establish that the emails were sent to "California

9   electronic mail address[es]."

10
11
      **c.**     **The inactive email accounts are not furnished to residents of California.**

12        Plaintiffs concede that inactive accounts do not belong to any actual customer, and that no

13  one utilizes such an account.  (Leventhal Decl., ¶ 3, Ex. 2 at 7:14-17; ¶ 4, Ex. 3 at 175:2-176:21.)

14  Because none of the inactive email accounts were used by, or belonged to, any actual customers,

15  the inactive email accounts were not "furnished" to "residents" of California at the time the

16  emails at issue were sent.  *See* § 17529.1.

17        **2.**     **The Inactive Account Emails were not sent from California.**

18        Vistaprint USA anticipates that Plaintiffs will seek to recover damages for emails that

19  were not sent "to" California email addresses by claiming that some of those emails were sent

20  "from" California.  (*See* Pls.' Mot. for Summ. J. (Dkt. No. 72) at 10:25-26.)  But Plaintiffs cannot

21  "save" liability for the Asis Inactive Account Emails and Foggy Inactive Account Emails by

22  claiming that the emails were sent "from" California.  First, Vistaprint USA is not located in

23  California.  Second, the only "evidence" Plaintiffs rely on to establish that certain emails were

24  sent "from" California is a list of Internet Protocol ("IP") addresses.  But IP addresses do not

25  identify the location from where an email is sent.

26        **a.**     **Vistaprint USA is not located in California.**

27        Vistaprint USA is ***not*** a California company but, rather, a Delaware corporation that

28  operates out of Lexington, Massachusetts.  (*See* Sokoloff Decl., ¶ 2; FAC, ¶ 5.)  It would be

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

20.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1    patently unreasonable to hold Vistaprint USA accountable under the theory that it sent emails

2    "from" California when it clearly did not do so.  Indeed, the legislative history of Section 17529.5

3    confirms that Vistaprint USA cannot be held responsible under the theory that some of the emails

4    in this case were sent "from" California: "The bill would … prohibit a person or entity located in

5    California from initiating or advertising in unsolicited commercial e-mail advertisements.  The

6    bill would prohibit a person or entity not located in California from initiating or advertising in

7    unsolicited commercial e-mail advertisements sent to a California e-mail address."  Senate Bill

8    No. 186 (2003-2004 Reg. Sess.) (attached as Exhibit 9 to Leventhal Decl.).

9                    **b.        There is no evidence that the emails were sent from California.**

10   Even if the Court disregards the legislative history and the fact that Vistaprint USA is not

11   located in California, there is no evidence that any of the emails at issue in this case were sent

12   "from" California.  Plaintiffs' reliance on a chart of IP addresses, taken from the header portions

13   of the emails at issue, is misplaced.  (*See* Pls.' Mot. for Summ. J. (Dkt. No. 72) at 10:25-26.)  IP

14   addresses only correspond to an Internet service provider relied on by a sender to connect to the

15   Internet.  At best, an IP address corresponds to a physical location of an Internet service provider,

16   but has nothing to do with the actual sender's physical location.  There is, therefore, no genuine

17   dispute of material fact on this issue.  FED. R. CIV. P. 56.

18   This Court has previously recognized that IP addresses do not correspond to an email

19   sender's physical location.  In *UMG Recordings Inc. v. Doe*, No. C 08-1038 SBA, 2008 WL

20   2949427, at *2 (N.D. Cal. July 30, 2008), this Court noted:

21       ISPs [Internet Service Providers] own or are assigned certain blocks or ranges of
         IP addresses.  A subscriber gains access to the Internet through an ISP after
22       setting up an account with the ISP.  An ISP then assigns a particular IP address in
         its block or range to the subscriber when that subscriber goes "online."  After
23       reviewing the subscriber activity logs, which contain the assigned IP addresses, an
         ISP can identify its subscribers by name.  Thus, when an ISP is given a
24       defendant's IP address and the date and time of [activity], it quickly and easily
         can identify the name and address of … the ISP's subscriber, because that
25       information is contained in the ISP's subscriber activity log files.

26   (Citations omitted.)  *See also Optinrealbig.com, LLC v. Ironport Sys. Inc.*, 323 F. Supp. 2d 1037,

27   1040-41 (N.D. Cal. 2004) (noting that IP addresses in emails permitted SpamCop to trace the ISP

28   of the alleged spammer, and the ISP then had to find the actual sender of the email).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO                                21.                    DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA

1    Additionally, Plaintiffs have conceded that IP addresses do not identify the physical

2    location of the sender of an email.  Asis' owner testified regarding how the sender of an email is

3    assigned an IP address, not related to their physical location, but as part of a pool of IP addresses

4    owned by an Internet service provider.  (*See* Leventhal Decl., ¶ 5, Ex. 4 at 72:4-74:23.)  In fact,

5    the IP addresses Plaintiffs associate with the emails sent to Foggy include Foggy's own IP

6    address.  (*See* Leventhal Decl., ¶ 4, Ex. 3 at 183:12-189:23.)  But Foggy concedes that the emails

7    in this case were not sent by Foggy or its customers.  (*Id.*)

8    Because none of the inactive account email addresses meet the definition of a California

9    electronic mail address under the statute, the Court should grant partial summary judgment that

10   the 2,881 Asis Inactive Account Emails and 1,008 Foggy Inactive Account Emails were not sent

11   from California or to California electronic mail addresses as defined under Section 17529.1.

12   **IV.   CONCLUSION**

13   For the foregoing reasons, Vistaprint USA respectfully requests that the Court enter

14   summary judgment in its favor.  Alternatively, partial summary judgment should be granted

15   regarding the one-year statute of limitations and the emails sent to inactive email accounts.

16   Dated: April 20, 2010                    COOLEY GODWARD KRONISH LLP
                                              MICHAEL G. RHODES (116127)
17                                            MAZDA K. ANTIA (214963)
                                              JOSEPH S. LEVENTHAL (221043)
18

19

20                                            */s/Joseph S. Leventhal*
                                              _____
21                                            Joseph S. Leventhal (221043)
                                              Attorneys for Defendant
22                                            VISTAPRINT USA, INCORPORATED

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

22.

DEFENDANT VISTAPRINT USA, INCORPORATED'S
MSJ OR, IN THE ALT., PARTIAL SUM. JUD.
08-CV-5261-SBA